**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-2990 and 11-3516
_____

VALERIE MONTONE,
                    Appellant in No. 11-2990

v.

CITY OF JERSEY CITY;
JERSEY CITY POLICE DEPARTMENT;
MAYOR JERRAMIAH HEALY,
in his individual and official capacities;
POLICE CHIEF ROBERT TROY,
in his individual and official capacities
_____


JOHN ASTRIAB; CLYDE BANKS;
JAMES BUCKLEY; WILLIAM CULLINANE;
RICHARD DESTEFANO; DAVID LABRUNO;
EZIO SCERBO; JOHN WHALEN,
                    Appellants in No. 11-3516

v.

CITY OF JERSEY CITY;
JERSEY CITY POLICE DEPARTMENT;

MAYOR JEREMIAH HEALY, in his individual and official capacities;
POLICE CHIEF ROBERT TROY, in his individual and official capacities;
BUSINESS ADMINISTRAT BRIAN O'REILLY, in his individual and official capacities

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-06-cv-00280 and 2-06-cv-03790)
District Judge: Honorable Stanley R. Chesler

_____

Argued September 25, 2012

Before:  McKEE, *Chief Judge*, JORDAN and VANASKIE,
*Circuit Judges*.

(Filed: March 8, 2013)

Lisa Manshel, Esq.  *ARGUED*
Francis & Manshel
150 Essex Street, Suite 205
Millburn, NJ 07041
*Counsel for Appellant Valerie Montone*

Patricia Breuninger, Esq.
Kathleen P. Ramalho, Esq.  *ARGUED*
Breuninger & Fellman
1829 Front Street
Scotch Plains, NJ 07076

*Counsel for Appellants John Astriab, Clyde Banks, James Buckley, William Cullinane, Richard DeStefano, David LaBruno, Ezio Scerbo, and John Whalen*

Richard A. Gantner, Esq.   *ARGUED*
Nee, Beacham & Gantner
722 Courtyard Drive
Hillsborough, NJ 08844
*Counsel for Appellees City of Jersey City, Jersey City Police Department, and Jerramiah Healy*

Domenick Carmagnola, Esq.   *ARGUED*
Carmagnola & Ritardi, LLC
60 Washington Street, Third Floor
Morristown, NJ 07960
*Counsel for Appellee Robert Troy*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

This consolidated appeal consists of two cases in which current and former sergeants in the Jersey City Police Department accuse defendants Jersey City, the Jersey City Police Department, Jersey City Mayor Jerramiah Healy (collectively, "Jersey City"), and former Jersey City Police Chief Robert Troy of retaliation for exercise of First Amendment rights and discrimination, in violation of 42 U.S.C. § 1983 and New Jersey state law. The District Court granted the defendants' motions for summary judgment. For

3

the reasons that follow, we will vacate the judgments of the District Court.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

Plaintiff Valerie Montone was a police officer with the Jersey City Police Department ("JCPD") from January, 1981 until April, 2010, when she retired as a sergeant. Plaintiffs John Astriab, Clyde Banks, James Buckley, William Cullinane, Richard DeStefano, David LaBruno, Ezio Scerbo, and John Whalen (the "*Astriab* plaintiffs") are present or former sergeants in the JCPD. The plaintiffs' claims arise out of their failure to be promoted from the rank of sergeant to lieutenant during Healy and Troy's tenure as mayor and police chief, respectively.

In 2004, Healy ran for mayor in a special election to complete the previous mayor's unexpired term. Montone supported opposing mayoral candidate Lou Manzo, and used saved vacation time to work in a leadership capacity on Manzo's campaign.

The campaign became particularly heated and personal, including allegedly threatening statements. Healy ultimately won the election, and appointed Troy as police chief in November, 2004. Troy served in this capacity until his retirement in July, 2006.

As police chief, Troy had the authority to make promotions within the JCPD. Promotions from sergeant to lieutenant in the JCPD are made from the "Eligible/Fail

4

Roster," informally known as "the promotion list." (Montone Appendix 450-52 ["M.A"].) Officers are ranked on the list based on their performance on a civil service examination. Promotions to lieutenant are generally made starting at the top of the list with the most highly-ranked candidate and working down the list in numerical order.[1]

Plaintiffs claim that all promotions from sergeant to lieutenant were halted by Healy and Troy during Troy's tenure as police chief to penalize Montone for her support of Mayor Healy's opponent. Each of the plaintiffs had passed the civil service examination required to be promoted to the rank of lieutenant and were ranked accordingly on the 2003-2006 promotion list. From November 2004, when Healy and Troy took office, to January 15, 2006, when the promotion list expired,[2] Montone was ranked fifth out of thirty-nine eligible officers. The other plaintiffs were ranked as follows. Scerbo was first; LaBruno, second; Whalen, third; Buckley, seventh; Cullinane, eighth; Banks, ninth; Astriab, tenth; and DeStefano, eleventh.

---

[1] Troy points out that, pursuant to the "Rule of Three," as provided for in §§ 4A:4-4.8 and 11A:4-8 of the New Jersey Administrative Code, he could have promoted any "one of the top three interested eligibles" on the promotion list. N.J. Admin. Code §§ 4A:4-4.8(a)(3) (2012).

[2] The promotion list expired on January 15, 2006. A new list issued following the administration of a subsequent civil service examination (the "2006-2009 promotion list").

During Troy's tenure as police chief, the number of officers in the rank of lieutenant decreased from fifty-six to thirty, even though an agreement between Jersey City and the State of New Jersey Division of Local Government authorized sixty-six lieutenants. In November, 2004, February, 2005, and March, 2005, JCPD Operations Division Commander Inspector Mark Russ issued memoranda to Troy recommending that between five and eleven officers be promoted to lieutenant.

Nonetheless, during Troy's term as police chief, not a single police officer was promoted to lieutenant. Promotions were made to other ranks within the JCPD, including to the ranks of deputy chief, inspector, captain, sergeant, and detective. On December 16, 2006, Healy, then-police chief Thomas Comey, and the recently-retired Troy held a meeting during which they decided not to promote any of the plaintiffs to lieutenant, despite Business Manager Brian O'Reilly's urging to do so. Two days later, on December 18, 2006, twelve officers were promoted to lieutenant from the 2006-2009 promotion list. Only plaintiff Scerbo was promoted to lieutenant from the 2006-2009 promotion list.[3]

A number of witnesses gave deposition testimony in support of plaintiffs' theory that *all* promotions from sergeant to lieutenant were halted to retaliate against Montone.

_____

[3] According to Jersey City, plaintiffs Astriab, Banks, and Whalen did not take the civil service examination required to qualify for the 2006-2009 promotion list, and LaBruno did not pass the exam and thus was not eligible for a promotion after the 2003-2006 list expired. Plaintiff Whalen retired from the JCPD in March 2006.

DeStefano, for example, stated in his deposition that Troy told him that he would not be promoted because he was behind Montone on the promotion list and "[t]he Mayor will not promote her." (M.A. 1792.) In this same conversation, Troy noted that DeStefano was "okay with us" because he "didn't try to hurt us." (M.A. 1792.) DeStefano understood this to mean that because he had not "come out against [Healy] in the election," he had not been blacklisted. (M.A. 1792.) Whalen testified to having a substantially similar conversation with Troy, who stated that Whalen "didn't hurt us," and that Troy was "not making promotions" and "not promoting her." (M.A. 2265.) When Whalen protested that this was "not fair," Troy responded by asking Whalen, "Well, how would you feel if your best friend's wife is sitting at the kitchen table crying over threats made by [Montone] against her son and nephew?" (M.A. 2265.) Scerbo, meanwhile, testified that Troy had told him that he "should have no problem" getting a promotion because he "was before Valerie" on the promotion list. (M.A. 2094.)

Montone also points to evidence of Healy and Troy promoting their political supporters, and of Jersey City's history of political patronage. Healy testified, for example, that he had spoken to Troy about both Kevin Guy and Patricia Cassidy, whose relatives were political supporters of Healy and both of whom were ultimately promoted to sergeant.

Jersey City argues that no lieutenant promotions were made "due to budgetary concerns at the Police Department and a desire to improve the department's organizational structure to permit more supervisory police officers on

7

patrol." (Jersey City's M. Br. 6.)[4] Jersey City emphasizes that "[t]here was no plan to stop promotions in order to avoid promoting [Montone]." (Jersey City's M. Br. at 7.) Troy further contends that "there was not a shortage of Lieutenants," (Troy's M. Br. 4), and that political opponents of Healy, such as Edwin Gillan and Roberto Atkinson, were promoted to sergeant despite being "vocal supporters of Louis Manzo in the 2004 Election." (Troy's M. Br. 7.)

Montone contends that in addition to suffering retaliation for her political activities, she also incurred retaliation because of her involvement in numerous sexual harassment investigations and complaints against the JCPD, dating back to 1993 and continuing until her retirement in 2010. Most notably, Montone reported to Captain Anthony D'Aiuto in 2002 that another officer, Marisa Johnston, was being sexually harassed by then-lieutenant Troy.

In addition to not being promoted, Montone alleges that the retaliation against her included other conduct, such as Troy spreading rumors that Montone was the individual responsible for distributing embarrassing photographs of the mayor at his daughter's wedding, and that Montone "had threatened the mayor's son." (M.A. 467.) Montone also claims that political retaliation was the motive behind an internal JCPD investigation into whether she was sleeping on the job, and her subsequent reassignment to the less desirable evening tour. Captain Kevin Oras testified in support of Montone's theory, stating that Troy told him that "[a]s long as

_____

[4] The defendants filed separate briefs in the *Montone* and *Astriab* matters; the briefs are designated by "M" and "A," respectively.

8

I'm Chief, that cow c**t will never get promoted to lieutenant" and "will never go on the day tour." (M.A. 460.)

## B. Procedural History

On December 13, 2005, Montone filed suit against Jersey City and Troy in the Superior Court of New Jersey, asserting ten causes of action: (1) gender discrimination in employment, in violation of the New Jersey Law Against Discrimination ("NJLAD"); (2) employment retaliation, also in violation of the NJLAD; (3) retaliation for protected conduct, in violation of the New Jersey Conscientious Employee Protection Act; (4) retaliation for protected First Amendment speech, in violation of 42 U.S.C. § 1983; (5) retaliation for political affiliation protected by the First Amendment, also in violation of § 1983; (6) disparate treatment in violation of the Equal Protection Clause and § 1983; (7) retaliation for speech protected by the New Jersey Constitution and the New Jersey Civil Rights Act; (8) retaliation for political affiliation protected by the New Jersey Constitution and the New Jersey Civil Rights Act; (9) sexual harassment, in violation of the NJLAD; and (10) intentional infliction of emotional distress. *See Montone v. City of Jersey City*, No. 06-280 (SRC)(MAS), 2011 WL 2559514, at *1 (D.N.J. June 27, 2011). In August, 2005, DeStefano, Cullinane, Whalen, Scerbo, Astriab, and Banks gave Certifications in support of Montone's claims against the defendants. The defendants removed the action to federal court in January, 2006. In August, 2006, the *Astriab* plaintiffs filed suit in the United States District Court for the District of New Jersey, asserting claims for (1) gender discrimination and (2) retaliation in violation of the NJLAD, as well as claims pursuant to § 1983 for (3) retaliation related

9

to Montone's political affiliation in violation of the First Amendment and (4) disparate treatment in violation of the Fourteenth Amendment. *See Astriab v. City of Jersey City*, No. 06-3790 (SRC)(MAS), 2011 WL 5080353, at *1 (D.N.J. Oct. 25, 2011).

On June 27, 2011, the District Court granted summary judgment for Jersey City and Troy on Montone's free speech and political affiliation claims. As to the political retaliation claim, the District Court found that Montone had failed to muster sufficient evidence of a causal relationship between Montone's support of Healy's opponent and the failure to be promoted to lieutenant. *See Montone*, 2011 WL 2559514, at *11. The District Court reached this same conclusion with regard to Montone's other political retaliation claims, such as her claim that she was reassigned to the evening tour because of her support of Manzo. *See id.* at *6. As to Montone's claim that she suffered retaliation for complaining about gender discrimination in the operation of the JCPD, the District Court determined that Montone's complaints were not entitled to protection under the First Amendment. Having granted summary judgment to the defendants on the First Amendment claims in Counts Four and Five, and Montone having voluntarily withdrawn her Fourteenth Amendment equal protection claim, *id.* at *10 n.7, the District Court "exercise[d] its discretion not to retain supplemental jurisdiction over the remaining state law claims," and remanded the case to the Superior Court of New Jersey. *Id.* at *10-11.

On August 16, 2011, the District Court similarly granted summary judgment in favor of Jersey City and Troy on the *Astriab* plaintiffs' claims brought under § 1983 for

10

retaliation and denial of equal protection in violation of the First and Fourteenth Amendments (Counts Three and Four). *See Astriab*, 2011 WL 5080353, at *1. With regard to the political retaliation claim, the District Court declined to address the question of whether the *Astriab* plaintiffs have standing to bring a cause of action for First Amendment retaliation based upon Montone's allegedly protected conduct, reasoning that it was unnecessary to do so because "Plaintiff[s] ha[ve] otherwise failed to defeat" the defendants' summary judgment motions. *Id.* at *2. Specifically, the District Court found that "Plaintiffs have failed to point to evidence from which a reasonable trier of fact could decide in their favor on the question of whether Montone's political conduct was a motivating factor in the decision not to promote her or them."[5] *Id.* at *4. Declining to exercise supplemental jurisdiction over the remaining state law claims, the District Court dismissed them, without prejudice. *Id.* at *6.

## II. DISCUSSION

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1443, and we have appellate jurisdiction under 28 U.S.C. § 1291. We employ a *de novo* standard of review to grants of summary judgment, "applying the same standard as the District Court." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). "This requires that we view the

---

[5] The *Astriab* plaintiffs appeal only the District Court's grant of summary judgment on Count Three, and thus we need not address the District Court's decision on their equal protection claim.

11

underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Id.* Summary judgment shall be granted where no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We will address the District Court's decisions on Montone's claims and the derivative claims asserted by the *Astriab* plaintiffs separately.

## A. Montone's Claims

Montone appeals the District Court's grant of summary judgment on her claims under § 1983 for retaliation for political affiliation and speech, in violation of the First Amendment. We will address each issue in turn.

### 1.

Our jurisprudence governing political association retaliation claims under the First Amendment has its origins in the Supreme Court's "trilogy" of "political patronage cases." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)). From these cases and their progeny, "we have derived a three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). First, the plaintiff must establish that "she was employed at a public agency in a position that does not require political affiliation." *Id.* Second, the plaintiff must show that she engaged in conduct protected by the First Amendment. *Id.* And finally, the

12

plaintiff must prove that the constitutionally-protected conduct was a substantial or motivating factor for the adverse employment action. *Id.*

The first two prongs of the test for political affiliation retaliation are not in dispute here. Montone was employed as an officer with the JCPD, a position where political affiliation is not "an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518; s*ee also Elrod*, 427 U.S. at 367 ("Limiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end. Nonpolicymaking individuals usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party."). Similarly, Montone's political support of Manzo was constitutionally protected conduct. *See Branti*, 445 U.S. at 519 ("[I]t is manifest that . . . continued employment . . . cannot properly be conditioned upon . . . allegiance to the political party in control . . . ."); *Galli*, 490 F.3d at 272 ("[A] plaintiff can meet the second prong of a *prima facie* political discrimination claim if she suffers because of active support for a losing candidate . . . .").

Accordingly, the matter in dispute here concerns the third prong of the test: whether Montone's political support of Manzo "was a substantial or motivating factor" in the decision to not promote her from sergeant to lieutenant. *Galli*, 490 F.3d at 271. The District Court focused specifically on this prong of the test, ultimately finding that Montone "offered no evidence from which a reasonable trier of fact could conclude that [her] political affiliation or other protected conduct was a substantial motivating factor in the decision not to promote [her]." *Montone*, 2011 WL 2559514,

13

at *6. We find that in so holding the District Court misapplied the summary judgment standard.

The District Court first erred by drawing unfavorable inferences against Montone, the non-movant. The District Court concluded, for example, that when Troy told DeStefano that he was "okay" because DeStefano "didn't try to hurt us," (M.A. 1792), "[n]o reasonable trier of fact could infer from the DeStefano testimony that Troy was speaking about political affiliation or protected conduct."[6] *Montone*, 2011 WL 2559514, at *5. The District Court, relying on Whalen's testimony, determined that "hurt" in this context referred to Montone "making threats against someone's son and nephew, which upset that person's wife." *Id.* Accordingly, the District Court found that "the decision not to promote Plaintiff was based on personal animus, not retaliation for political affiliation or activities or other protected conduct," and that "the 'you didn't hurt us' evidence does not raise any

---

[6] Troy and Jersey City argued before the District Court that such statements were inadmissible hearsay. The District Court did not rule on the issue because it concluded that this evidence, "even if admitted, fails to raise factual disputes sufficient to defeat the motions for summary judgment . . . ." *Montone*, 2011 WL 2559514, at *4 n.3. We hold that these statements made by Troy are not hearsay under Federal Rule of Evidence 801(d)(2), and thus the District Court properly considered the statements in resolving the summary judgment motions. *See* Fed. R. Evid. 801(d)(2)(A) (defining as "not hearsay" a statement that is "offered against an opposing party and . . . was made by the party in an individual or representative capacity . . . .").

14

factual dispute about the motivating factor element." *Id.* This conclusion, however, directly contradicts DeStefano's own understanding of the conversation. According to his deposition testimony, DeStefano understood Troy to mean that he, DeStefano, was "okay" precisely because he had not "come out against [Healy] in the election." (M.A. 1792.) DeStefano's understanding is consistent with Montone's claim that Troy set out to block her promotion to lieutenant because she had sought to prevent Healy's election.

Troy attacks DeStefano's credibility by noting that his statement was not contained in DeStefano's original Certification obtained by Montone's counsel in August, 2005, and that DeStefano is a plaintiff in the *Astriab* litigation, a case "whose success . . . is entirely dependent on Montone's success herein . . . ." (Troy's M. Br. 25.) Furthermore, Troy notes that DeStefano's testimony could be interpreted differently – at one point, DeStefano testified to rumors concerning Montone stepping on the foot and spitting in the face of Healy's spouse, for example. (*See* M.S.A. 383.) Troy suggests that he could have been referring to this incident when he discussed how Montone had "hurt us." (M.A. 1792.) While Troy may ultimately prevail on this point, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed[,] and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On this issue, the District Court appears to have made credibility determinations, weighed the evidence against Montone, and failed to draw all justifiable inferences in her favor. Stated

15

otherwise, it would not be unreasonable to construe Troy's "you didn't hurt us" statement as referring to Montone's opposition to Healy.

Furthermore, the District Court, despite appearing to have accepted Montone's argument that Jersey City and Troy's justifications for not promoting any lieutenants were pretextual, erred in concluding that a jury could not draw from that fact an inference that the non-promotion of Montone was intended to retaliate for her political activity. Troy contended that promotions to lieutenant were suspended for legitimate budgetary and operational reasons. But the District Court observed:

> Examining Plaintiff's evidence as a whole, and making every reasonable inference in favor of Plaintiff, as the nonmovant, a reasonable trier of fact, hearing Plaintiff's evidence, could easily find that Chief Troy bore ill will toward Plaintiff and was determined not to promote her to Lieutenant. Moreover, there is evidence which, if credited by the trier of fact, supports the inference that he bore such ill will toward Plaintiff that he stopped all promotions to Lieutenant during his tenure as Chief, even though this decision may have been a poor one from the perspective of

16

> the organizational needs of the
> Police Department.

*Montone*, 2011 WL 2559514, at *6. The District Court determined, however, that "[a]t best, this constitutes evidence of retaliation. None of this . . . is probative of the motive for the retaliation." *Id.*

It is by now axiomatic that a plaintiff in an employment retaliation case may avoid summary judgment by offering evidence that discredits the reasons articulated by the defense for the adverse employment action. *See, e.g.*, *Stephens v. Kerrigan*, 122 F.3d 171, 181 (3d Cir. 1997). By presenting evidence that casts doubt on Troy's articulated rationale for suspending all promotions to the lieutenant position, Montone is entitled to have the trier-of-fact decide whether it was a general dislike of her that motivated Troy, or whether it was personal animosity that sprung from Montone's vocal opposition to the candidacy of Troy's patron. Indeed, in *Stephens*, we held that summary judgment was not appropriate where plaintiffs "made a sufficient showing to discredit [defendant's] proffered reasons for not promoting from the lieutenants lists and thus [were] entitled to have a fact finder determine whether their political affiliation or non-support was a substantial or motivating cause of the failure to promote." 122 F.3d at 183. The District Court here similarly agreed with Montone that Jersey City and Troy's proffered reasons were pretextual, but then granted summary judgment to the defendants rather than allowing a fact finder to determine whether Montone's political activities during the election were the real reason behind her non-promotion.

17

The District Court's dismissal of evidence of a pattern of political patronage in Jersey City was also improper. *See Montone*, 2011 WL 2559514, at \*3 ("Evidence that, during Mayor Healy's administration, other people have gotten jobs or promotions in Jersey City for political reasons may have some minimal probative value as background, but it is clearly insufficient by itself to support an inference that Plaintiff was retaliated against.") As we held in *Goodman*, "a history of improper promotion practices using sponsorship as a factor" may, when presented with other facts, prove to be "sufficient circumstantial evidence to permit a reasonable jury to find that political affiliation was a substantial factor in the decision not to promote . . . ." *Id.* at 674. In this case, there are other facts that, when combined with evidence of political patronage, suffice to defeat summary judgment. In particular, there is the evidence of recommendations that the number of lieutenants on the police force be increased as well as evidence that there were promotions to every other rank but lieutenant during Troy's tenure as Police Chief that, when considered in combination with a history of political patronage, supports a reasonable inference that Montone was not promoted in retaliation for her political activity.

The District Court also erred in giving substantial weight to evidence that Troy promoted at least one of candidate Manzo's supporters, Edwin Gillan. *Montone*, 2011 WL 2559514, at \*6 n.6. While this may be relevant evidence for the fact finder to consider when ultimately determining if Montone was in fact retaliated against based on her political activity, it does not preclude a jury from finding that Montone's support for Manzo was the motivating factor in not receiving a promotion. At the summary judgment stage, Montone need only "'make a showing sufficient to establish

18

the existence of [the] element[s] essential to [her] case . . . .'" *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Her showing in this case is not overcome by the fact that one supporter of Healy's opponent was promoted, especially given the evidence of how active Montone was in supporting Manzo. The three-prong test for retaliation for political affiliation does not require that Montone prove that every other supporter of Healy's opponent also suffered retaliation.

In summary, the District Court misapplied the summary judgment standard by weighing evidence and drawing inferences against Montone, the non-movant, even after acknowledging that she presented sufficient evidence to show that the reasons proffered by Jersey City and Troy for her non-promotion may have been pretextual. The District Court also improperly dismissed evidence of a culture of political patronage in Jersey City, and erred in granting summary judgment based upon evidence of the promotion of another Manzo supporter. *Montone*, 2011 WL 2559514, at *6 n.6. Accordingly, we vacate the District Court's grant of summary judgment for the defendants on the political affiliation claim.

2.

We now turn to Count Four: whether Montone was retaliated against for speech protected under the First Amendment. We analyze Montone's claim, arising as it does in the public employment context, under a three-part test: (1) was the plaintiff speaking as a citizen rather than as a public employee discharging her employment duties; (2) did the

19

plaintiff's statements address a matter of public concern as opposed to a personal interest; and (3) did the plaintiff's employer have "'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement [the employee] made." *Gorum v. Sessoms,* 561 F.3d 179, 185 (3d Cir. 2009), (quoting *Garretti v. Ceballos,* 547 U.S. 410, 418 (2006)).

The District Court held that Montone's free speech claim failed the second part of the test – that the speech at issue involve a matter of public concern, observing that she "neither precisely identifies the speech that she contends was on matters of public concern, nor makes any case at all that such speech was on matters of public concern." *Id.* Quoting *Connick v. Myers*, 461 U.S. 138 (1983), the District Court then granted summary judgment to Jersey City and Troy on this claim because

> "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."

*Id.* (quoting *Connick*, 461 U.S. at 147).

20

Montone's allegedly protected speech concerns in large measure her complaints of gender inequality in the workplace dating back to the 1990s, when she successfully brought a sexual harassment lawsuit. Montone continued to complain of sexual harassment even after that lawsuit was concluded. In 2003, she informed a captain in the JCPD that Troy, who was then a lieutenant, was sexually harassing Officer Marisa Johnston.

We addressed the question of whether a public employee's speech regarding sexual harassment can constitute protected speech in *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968 (3d Cir. 1997) (en banc), where the plaintiff, a former Allegheny County employee, was fired after reporting that she was sexually harassed by an assistant to the County Commissioner. *Id.* at 970. The plaintiff subsequently sued the County and two County employees, alleging, *inter alia*, retaliation for speech protected by the First Amendment, in violation of § 1983. *Id.* at 975. Applying the analytical framework laid out by the Supreme Court in *Connick*, we noted that the key to the "public concern" inquiry is "whether expression of the kind at issue is of value to the process of self-governance." *Id.* at 977. We further explained that "the issue is whether it is important to the process of self-governance that communications on this topic, in this form and in this context, take place." *Id.* We observed that "[r]acial discrimination in the assignment of school personnel . . . was characterized by the *Connick* Court as 'a matter inherently of public concern.'" *Id.* (quoting *Connick*, 461 U.S. at 148 n.8). Extending this reasoning, we noted that gender discrimination, "when practiced by those exercising authority in the name of a public official, is as much a matter of public concern as racial discrimination practiced under

21

similar circumstances." *Id.* at 978. We also noted, however, that not "all public employee complaints about sexual harassment are matters of public concern," and that examination of "all of the surrounding circumstances" is required when making such a determination. *Id.* at 980.

A circumstance that weighed in favor of finding that the communication in *Azzaro* involved a matter of public concern was that the alleged harassment "brought to light actual wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official." *Id.* at 978. While Montone's allegations of gender discrimination and harassment do not directly concern an elected official, as even Johnston's sexual harassment complaint against Troy occurred prior to Healy's election and appointment of Troy as chief, the fact that Montone's speech would not directly help the public evaluate an elected official's performance is not dispositive.

For example, in *Campbell v. Galloway*, 483 F.3d 258 (4th Cir. 2007), the plaintiff, a former police officer, sued the Town of Southern Pines, the police department, and several town employees, alleging, *inter alia*, First Amendment retaliation when she was fired after filing several complaints of sexual harassment with the police chief, as well as a gender discrimination and retaliation charge with the Equal Employment Opportunity Commission. *Id.* at 262-64. In reviewing the District Court's grant of summary judgment for the defendants, the Fourth Circuit noted that, while "not every statement about sexual discrimination involves a matter of public concern, our cases have provided little concrete guidance on the question of when such a complaint amounts

22

to an issue of public concern." *Id.* at 269. The *Campbell* Court explained that this was perfectly acceptable:

> We see no reason to try to articulate any sort of bright-line rule in this case, nor are we certain that a bright-line rule would be consistent with the Supreme Court's directive that we engage in a case-and fact-specific inquiry to determine "[w]hether an employee's speech addresses a matter of public concern," by considering "the content, form, and context of a given statement, as revealed by the whole record."

*Id.* (quoting *Connick*, 461 U.S. at 147-48). The Fourth Circuit noted that "[t]o conclude, as the defendants would have us do, that a personal complaint about discrimination affecting only the complaining employee can *never* amount to an issue of public concern could improperly limit the range of speech that is protected by the First Amendment." *Id.* (emphasis in original).

Shifting to the facts in that matter, the *Campbell* Court noted that the plaintiff "complained about multiple instances of inappropriate conduct directed towards her," and wrote a letter to the police chief where she "also included complaints about inappropriate conduct directed towards other females." *Id.* As that case also concerned a grant of summary judgment to defendants, the Fourth Circuit "view[ed] the complaints in the light most favorable to [the plaintiff]," and concluded that

23

her "complaints about sexual discrimination do amount to matters of public concern." *Id.*

We find *Campbell's* reasoning persuasive. There are at least three separate instances of alleged sexual harassment here,[7] and the inappropriate conduct was not directed solely at Montone. Although no elected figure is involved, these facts otherwise present a stronger argument that Montone's speech was related to a matter of public concern than was presented in *Azzaro*, which referred only to a single incident. *See* 110 F.3d at 980 ("We do believe, however, that under all of the surrounding circumstances, Azzaro's reports address a matter of public concern even though they referred to a single incident."). Accordingly, we hold that Montone was engaged in protected activity as her speech involved a matter of public concern.

Once the public concern "threshold" is met, "we must balance between the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer], in promoting efficiency of the public services it performs through its employee.'" *Miller v. Clinton County,* 544 F.3d 542, 548 (3d Cir. 2008) (quoting *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 568 (1968). We find, as we did in *Azzaro*, that "[s]triking the appropriate balance in this case is not difficult," as "those governmental

---

    7    The three instances are the sexual harassment lawsuit from the 1990s, Montone's complaint against Carter from 2002-2003, and Montone's escalation of Johnston's sexual harassment claim against Troy from 2002. *See Montone*, 2011 WL 2559514, at *9.

24

interests are negligible here." 110 F.3d at 980. As in *Azzaro*, "[w]e fail to see how" Montone's speech "could have posed any threats to the government's interest in efficiency or effectiveness," especially in those instances when she used internal mechanisms to voice her grievances. *Id.* (finding that defendant's affirmative recognition that "complaints about sexual harassment were important to its ability to serve the public . . . [constituted] an acknowledgement . . . that communications in the manner and place of [plaintiff's] do not pose an undue threat of disruption"). Accordingly, we hold that Montone has demonstrated that her interest in the speech at issue outweighs Jersey City's interest in efficiency.

While not every one of Montone's statements addressed a matter of public concern,[8] and while Montone will still have to demonstrate at trial that she was acting as a citizen and not as a police officer when she engaged in what she claims to be protected conduct, and that her speech was a substantial or motivating factor in her non-promotion, the District Court erroneously granted summary judgment for the defendants on Montone's free speech claim by concluding that her gender discrimination complaints did not involve matters of public concern. Accordingly, we vacate the grant of summary judgment on the free speech claim.

B. The *Astriab* Plaintiffs' Claims

---

[8] For example, Montone's refusal to pay Troy money from the settlement of her first lawsuit does not appear to be a matter of public concern. *See Montone*, 2011 WL 2559514, at *9.

25

The *Astriab* plaintiffs appeal only the District Court's grant of summary judgment on their claim pursuant to § 1983 for retaliation for Montone's political affiliation in violation of the First Amendment (Count Three). Before addressing whether the District Court erred in granting summary judgment, we must first consider whether the *Astriab* plaintiffs have standing to bring an action for retaliation for political affiliation based on the defendants' alleged deprivation of *Montone's* First Amendment rights.[9] *See AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d Cir. 2001).

1.

"A party invoking federal jurisdiction must establish that he has standing to sue within the meaning of Article III, section two of the Constitution, which limits the courts to hearing actual cases or controversies." *Anjelino v. New York Times*, 200 F.3d 73, 88 (3d Cir. 1999). "[T]he irreducible constitutional minimum" of standing requires a party to set forth specific facts indicating the existence of an actual or imminent injury that is causally connected to the defendant's challenged action and is "'likely'" to be "'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504

---

[9] The Supreme Court has instructed courts of appeals to answer the jurisdictional question of standing before "proceeding to an easily-resolved merits question despite jurisdictional objections," in consideration of the "importance of the standing doctrine" to preserving separation of powers. *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 300 (3d Cir. 2003) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)).

U.S. 555, 560-61 (1992) (quoting *Simon v. En. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). "Courts assess whether a party has established injury-in-fact, causation, and redressability by considering whether the alleged injury falls within the 'zone of interests' that the statute or constitutional provision at issue was designed to protect; whether the complaint raises concrete questions, rather than abstract ones that are better suited to resolution by the legislative and executive branches; and whether the plaintiff is asserting his own legal rights and interests, as opposed to those of third parties." *Anjelino*, 200 F.3d at 88.

The Supreme Court has recognized that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citations omitted) (internal quotation marks omitted). The *Astriab* plaintiffs' suit presents one such difficult case. No other court of appeals has, to our knowledge, addressed the question presented by this case: whether a plaintiff has standing to bring an action for First Amendment political affiliation retaliation pursuant to § 1983 based on the defendant's alleged deprivation of another's First Amendment rights.

The defendants argue that the *Astriab* plaintiffs do not have standing because they failed to allege an actual injury and cannot satisfy their burden with respect to the causation requirement of Article III standing. According to Jersey City, "[t]he plaintiffs have not produced evidence of an inherent right to a promotion," or shown that absent the illegal conduct against Montone "any of them was certain or even likely to have been promoted." (Jersey City's A. Br. 48.) Jersey City

further argues that the plaintiffs have not established the alleged injury's nexus to the defendants' purported violation of Montone's First Amendment rights, reasoning that "[a]llegations of discrimination concerning Montone, even if true, could have no bearing upon employment decisions made in regard to [the] plaintiffs." (Jersey City's A. Br. 48.) Troy, for his part, distinguishes between the plaintiffs ranked above and below Montone, concluding that the plaintiffs ranked above Montone "could have been promoted regardless of any . . . discrimination" against her, while those ranked below did not suffer an actual injury "because there is no guarantee promotions would have continued beyond [Montone's promotion] and that they would have ever been promoted." (Troy's A. Br. 47, 51.)

The *Astriab* plaintiffs argue to the contrary that they have sufficiently alleged an actual injury, namely, their non-promotion. Furthermore, the plaintiffs aver that they have satisfied the causation requirement by alleging specific facts concerning how Montone's political activities during the 2004 mayoral campaign resulted in the defendants refusing to promote Montone, and any other eligible sergeant, during Troy's tenure as police chief.

The *Astriab* plaintiffs assert that their position is supported by our decision in *Anjelino*. We agree. In *Anjelino*, male and female employees of the New York Times Company (the "Times") mailroom sued the Times and other defendants for sex discrimination in violation of Title VII of the Civil Rights Act of 1964. 200 F.3d at 78. The female employees alleged that they were not promoted from the "priority list," which determined whether and how often an employee would receive mailroom shifts, due to their gender.

28

*Id.* at 80. The male employees similarly brought claims under Title VII, alleging, *inter alia*, that "they suffered pecuniary injury because they were on the priority list among women, who were not hired due to sex discrimination because hiring stopped when the women's names were reached." *Id.* at 89. The district court dismissed the male employees' claims, finding that they lacked standing to sue under Title VII. *Id.* at 85.

We reversed, holding that "'indirect' victims of sex-based discrimination have standing to sue under Title VII if they allege colorable claims of injury-in-fact that are fairly traceable to acts or omissions by defendants that are unlawful under the statute," and therefore the male employees had standing even though the defendants' discriminatory actions were directed at the female employees. *Id.* at 92. In so holding, we emphasized: "That the injury at issue is characterized as indirect is immaterial, as long as it is traceable to the defendant's unlawful acts or omissions." *Id.* We then concluded that the male employees satisfied Article III's injury-in-fact requirement because "allegations that sex discrimination adversely affected [plaintiffs] being hired as extras, as well as their seniority on the priority list, demonstrate actual injury," and, furthermore, the male employees pled sufficient "specific facts" to make the requisite showing of causation. *Id.*

More recently, the Supreme Court similarly held that an individual has standing to sue for employment retaliation pursuant to Title VII, relying on the protected conduct of another individual. In *Thompson v. N. Am. Stainless, LP*, 131 S.Ct. 863 (2011), plaintiff Thompson, an employee of North American Stainless (NAS), sued NAS for unlawful retaliation

under Title VII when he was fired after his fiancée, also an NAS employee, filed a sex discrimination charge against NAS with the Equal Employment Opportunity Commission. *Id.* at 867. In addressing the question of whether Thompson had standing to sue, the Court found that "Thompson's claim undoubtedly meets [the] requirements" of Article III standing. *Id.* at 869.

While *Anjelino* and *Thompson* involved questions of standing in the context of claims under Title VII, we find the reasoning in those cases persuasive. Indeed, we have similarly relied upon Title VII jurisprudence in resolving questions of first impression related to § 1983 claims because of the "consonance" of the "policy considerations" underlying each statute. *Squires v. Bonser*, 54 F.3d 168, 172 (3d Cir. 1995). Accordingly, we adopt the reasoning of *Anjelino* and *Thompson* in holding that a party has standing to bring an action for First Amendment political affiliation retaliation pursuant to § 1983, even where, as here, the alleged retaliation was directed towards another individual, provided the party can satisfy "[t]he irreducible constitutional minimum" of Article III standing. *Lujan*, 504 U.S. at 560.

The three requirements of Article III standing are satisfied here. The plaintiffs allege that each passed the civil service examination as required to be promoted to the rank of lieutenant, were ranked on the promotion list, and nonetheless were not promoted to lieutenant during Troy's tenure. The plaintiffs also allege that during Troy's term as police chief promotions were made in all other ranks in the JCPD except lieutenant, even though lieutenant promotions were authorized and necessary. Furthermore, the plaintiffs allege that the defendants consciously chose not to promote

30

Montone or any other sergeant due to Montone's involvement in the 2004 mayoral election, to the effect that the *Astriab* plaintiffs were not promoted or, at the very least, were prevented from moving up in numerical rank on the promotion list. Thus, as in *Anjelino*, the *Astriab* plaintiffs' allegations that the defendants' illegal political retaliation "adversely affected [plaintiffs] being [promoted], as well as their seniority on the priority list, demonstrate actual injury." *Anjelino*, 200 F.3d at 92; *see also Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 718 (6th Cir. 2006) (finding plaintiff police officers' "alleged injury to be sufficiently concrete and particularized to satisfy constitutional requirements" where plaintiffs alleged that they were not promoted or incurred a delay in being promoted to sergeant as a result of the defendants' use of a 1999, rather than 2001, promotion list).

The *Astriab* plaintiffs have also satisfied their burden with respect to the causation element. The plaintiffs allege that Healy and Troy did not promote Montone following her involvement in the 2004 mayoral campaign, specifically noting that Troy informed several sergeants that he was "not making any lieutenants," "not promoting [Montone]" because she "hurt us," and therefore no sergeants would be promoted to lieutenant. (Astriab Appendix 362-63, 374, 387 ["A.A."].) The plaintiffs also aver that none of the *Astriab* plaintiffs was promoted to the rank of lieutenant during Troy's tenure as police chief, even though all were eligible for promotions, there was a shortage of lieutenants in the JCPD, Troy was authorized to fill vacant lieutenant positions, and promotions occurred in other ranks in the JCPD.

31

The final Article III standing requirement – redressability – is also satisfied. As we have recognized, "§ 1983 has always provided both legal and equitable relief." *Squires*, 54 F.3d at 172. Available forms of equitable relief include back pay and "retroactive seniority." *Gurmankin v. Costanzo*, 626 F.2d 1115, 1120 (3d Cir. 1980). Additionally, front pay is recoverable, and, in some circumstances, instatement is also an appropriate remedy. *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F.2d 1047, 1054 (5th Cir. 1988); *see also Shore v. Fed. Express Corp.*, 777 F.2d 1155, 1159-60 (6th Cir. 1985); *Todaro v. Cnty. of Union*, 920 A.2d 1243, 1248 (N.J. Super. Ct. App. Div. Apr. 19, 2007) (holding that instatement and the "rightful place" remedy, by which the plaintiff is placed in the next comparable job opening, are both appropriate remedies "where a public employee has been denied appointment to a classified civil service position solely on the basis of political affiliation," in violation of § 1983). Thus, there exists an "appropriate remedy that we can grant" the *Astriab* plaintiffs, *AT&T*, 270 F.3d at 171, and the plaintiffs have made the requisite showing that it is "'likely, as opposed to merely speculative, that [their] injury will be redressed by a favorable decision.'" *Pitt News v. Fisher*, 215 F.3d 354, 361 (3d Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Finally, we turn to the prudential standing requirement that a plaintiff's asserted interest falls within the "zone of interests" that the constitutional guarantee at issue was designed to protect. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004). The Supreme Court "ha[s] described the 'zone of interests' test as denying a right of review if the plaintiff's interests are so marginally related to or inconsistent

32

with the purposes implicit in the statute [or constitutional guarantee in question] that it cannot reasonably be assumed" suit was intended to be permitted. *Thompson*, 131 S.Ct. at 870 (citation omitted) (internal quotation marks omitted); *see also Ass'n of Data Processing Serv. Orgs., Inc.*, *v. Camp*, 397 U.S. 150, 153 (1970).

The *Astriab* plaintiffs assert that, as a result of the defendants' retaliation against Montone for her protected political conduct, they did not receive a promotion for which they were eligible, in contravention of the First Amendment and § 1983. It is axiomatic that "political belief and association constitute the core of those activities protected by the First Amendment." *Elrod*, 427 U.S. at 356. In *Robertson v. Fiore*, 62 F.3d 596 (3d Cir. 1995), we acknowledged the First Amendment's protections for public employees in positions not requiring political affiliation, and explained the important policy considerations motivating this Constitutional guarantee:

> Without the protection afforded by the Constitution, employees might forgo the expression of their political beliefs or artificially change their political association to avoid displeasing their supervisors. Such coercion, *whether direct or indirect*, is incongruent with a free political marketplace.

62 F.3d at 600 (emphasis added).

33

That the retaliatory conduct at issue here was not directed at the *Astriab* plaintiffs is not dispositive, because the First Amendment concerns implicated by political affiliation retaliation are the same whether a plaintiff is the "direct" or "indirect" victim of illegal political retaliation. *See Robertson*, 62 F.3d at 600. An employee might be equally dissuaded from engaging in protected political activity where it is his fellow workers who experience retaliation for that employee having engaged in the "core" First Amendment activities of free "political belief and association." *Elrod*, 427 U.S. at 357. The *Astriab* plaintiffs' interest in being promoted in a public agency employment position free from the influences of political association thus falls within the "zone of interests" protected by the First Amendment.

Because the *Astriab* plaintiffs have pled specific facts demonstrating the existence of all three Article III standing requirements, and because the plaintiffs' asserted interest falls within the "zone of interests" protected by the First Amendment, we hold that they have standing to pursue a claim pursuant to § 1983 for retaliation for political affiliation in violation of the First Amendment, even though the underlying protected conduct is that of Montone, not of the *Astriab* plaintiffs themselves.

2.

We turn next to the question of whether the District Court erroneously granted summary judgment for the defendants on the *Astriab* plaintiffs' claim.

As discussed in Part II(A)(1) *supra*, a plaintiff must satisfy a three-part test to establish a claim for First

34

Amendment political affiliation retaliation. *See Galli*, 490 F.3d at 271. As in the *Montone* suit, the first two prongs of the test are not in dispute here. Each of the *Astriab* plaintiffs was employed as an officer with the JCPD, a position where political affiliation is not "an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. Furthermore, as discussed in Part II(B)(i) *supra*, the *Astriab* plaintiffs have standing to bring suit for a First Amendment violation pursuant to § 1983 based on the defendants' alleged retaliation against Montone as a result of her political activities. *See Branti*, 445 U.S. at 519; *Galli*, 490 F.3d at 272-73. Thus, the second prong of the test is satisfied. *See Galli*, 490 F.3d at 271. Therefore, as in the *Montone* suit*,* only the third prong of the test – the causation element – is disputed. *See id.*

The District Court found that the *Astriab* plaintiffs failed to meet their burden with respect to the causation element because they "failed to point to evidence from which a reasonable trier of fact could decide in their favor on the question of whether Montone's political conduct was a motivating factor in the decision not to promote her or them." *Astriab*, 2011 WL 5080353, at *4. We hold that when viewed in the light most favorable to the *Astriab* plaintiffs, the evidence was sufficient to establish a *prima facie* case of First Amendment retaliation, and thus the District Court erred in granting summary judgment for the defendants.

The District Court first erred by failing to consider much of the evidence the plaintiffs adduced to satisfy their burden of establishing a genuine issue of material fact. When evaluating a summary judgment motion, a district court must consider "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c). Yet, the District Court considered only two types of evidence presented by the *Astriab* plaintiffs: lieutenant Gillan's deposition testimony, which the District Court dismissed as "anonymous," inadmissible hearsay,[10] as well as Inspector Russ' memoranda recommending that Troy make promotions to lieutenant and Troy's testimony that he did not follow Russ' recommendations. *Astriab*, 2011 WL 5080353, at *3.

Among the evidence not mentioned by the District Court in its analysis of the summary judgment motions were the Jersey City government agreements authorizing the promotion of officers to the rank of lieutenant. The District Court also failed to consider personnel orders signed by Troy ordering promotions in every rank except lieutenant. Additionally, the District Court disregarded correspondence from O'Reilly and Police Director Samuel Jefferson, as well as deposition testimony from Healy, indicating that the defendants expressly refused to promote any of the plaintiffs to lieutenant upon expiration of the 2003-2006 promotion list, but almost immediately after the issuance of the 2006-2009 list, promoted twelve sergeants to lieutenant, only one of whom was an *Astriab* plaintiff. Furthermore, the District Court neglected to consider Jersey City and Healy's answers to interrogatories, as well as deposition testimony by several

---

[10] A full analysis as to the admissibility of Gillan's testimony is unnecessary because, as discussed below, there was sufficient other evidence to raise a genuine issue of material fact regarding the causation element.

*Astriab* plaintiffs, detailing conversations with Troy in which he explained that Montone and certain *Astriab* plaintiffs would not be promoted because of Montone's involvement in the 2004 mayoral election.[11]

We acknowledge that evidence was also presented indicating that the defendants' failure to promote the plaintiffs was the result of factors other than Montone's political affiliation. For example, Whalen testified that when he protested to Troy that it was "not fair" that neither Montone nor any other sergeant would be promoted, Troy responded by asking, "Well, how would you feel if your best friend's wife is sitting at the kitchen table crying over threats made by [Montone] against her son and nephew?" (A.A. 401.) Scerbo testified that on another occasion Troy told him that he "should have no problem" obtaining a promotion because he "was in front of Valerie."[12] (A.A. 374.) Finally,

---

[11] Although the District Court rejected as inadmissible hearsay the deposition testimony of several of the *Astriab* plaintiffs, we hold that their testimony concerning Troy's statements is admissible as a party-opponent admission, and thus should have been considered in resolving the summary judgment motions. *See* Fed. R. Evid. 801(d)(2)(A).

[12] Although Jersey City argues that "the unreliable statements of Whalen, DeStefano and Scerbo must be discounted entirely," (Jersey City's A. Br. at 38), "[i]n considering a motion for summary judgment, [the] court may not make credibility determinations or engage in any weighing of the evidence . . . ." *Marino*, 358 F.3d at 247. Thus, Jersey City's argument is unavailing at this stage of the proceedings.

Troy testified that there was no shortage of lieutenants, and that the lack of promotions to lieutenant between 2004 and 2006 was due to budgetary concerns and restructuring of the JCPD.

Rather than counseling in favor of granting summary judgment for the defendants, however, the above-described evidence demonstrates the existence of a genuine dispute about material facts related to the causation element of the plaintiffs' First Amendment claim, including whether there was a shortage of lieutenants such that promotions were necessary (or not); whether Troy was authorized to make promotions; and the reason for the lack of promotions to lieutenant between 2004 and 2006. The District Court thus erred in concluding that there was no triable issue of fact regarding the causation element of the plaintiffs' claim.

Finally, the District Court erroneously drew inferences unfavorable to the *Astriab* plaintiffs, the non-movants, and improperly assumed the role of fact-finder. For example, the District Court found that Inspector Russ' memoranda to Troy recommending the promotion of officers to the rank of lieutenant, coupled with Troy's decision not to promote the plaintiffs, did not "constitute[] evidence from which a reasonable finder of fact could infer that Montone's political affiliation motivated Troy's decision." *Astriab*, 2011 WL 5080353, at *3. In so holding, the District Court reasoned that "[t]he most that Plaintiffs have pointed to is the temporal proximity of Troy's first act of not following . . . Russ' staffing recommendations after the November 2004 election." *Id.* The District Court thus concluded:

38

[E]ven if a trier of fact were to contemplate the inference, based on temporal proximity, that Montone's conduct during the election was a substantial factor in Troy's decision not to promote more Lieutenants, the Russ memoranda constitute independent intervening events which tend to preclude finding any such link. It is clear that Troy's inaction on the memoranda was most directly in response to the memoranda themselves. There is no evidence that the election played any proximate role and the timing appears to be coincidental.

*Id.*

The District Court's conclusion that "Troy's inaction on the memoranda was most directly in response to the memoranda themselves," *Astriab*, 2011 WL 5080353, at *3, directly contradicts the undisputed fact that after receiving Russ' memoranda, which called for promotions to various ranks including lieutenant, Troy made promotions to all other ranks except lieutenant. It also contradicts testimony by several *Astriab* plaintiffs, including Whalen, who testified that Troy stated that he was "not making any lieutenants" because Montone was not being promoted as a result of "hurt[ing] us" during the 2004 campaign. (A.A. 362-63, 387.) As we recognized in *Stephens*, a plaintiff in a First

39

Amendment retaliation action may prevail on summary judgment "by discrediting [the defendant's] proffered reason [for the employment action], either circumstantially or directly, or by adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or substantial cause of the adverse action." 122 F.3d at 181.

When viewed in the light most favorable to the plaintiffs, the evidence presented in opposition to the summary judgment motions demonstrates that there is a genuine issue of material fact as to whether Montone's political conduct was a motivating factor in the defendants' decision not to promote the *Astriab* plaintiffs. Accordingly, we vacate the District Court's grant of summary judgment to Jersey City and Troy on the political retaliation claim asserted in Count Three.

III.

For the foregoing reasons, we will vacate the District Court's judgments.