NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1117
_____

GEORGE B. KEAHEY,
                              Appellant
v.

BETHEL TOWNSHIP, PENNSYLVANIA; LIEUTENANT W. COYLE, 8302;
CORPORAL C. KIMBEL, 8343; PATROL OFFICER B. BUCK, 8366;
PATROL OFFICER REGISTER, 8324; PATROL OFFICER MERVINE, 8326;
PATROL OFFICER BRADSHAW, 8338; PATROL OFFICER L. STACKENI;
PATROL OFFICER JOHN DOE
_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-11-cv-07210
District Judge: The Honorable Ronald L. Buckwalter

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 6, 2014

Before: SMITH, SHWARTZ, and SCIRICA, *Circuit Judges*

(Filed: April 1, 2014)

_____

OPINION
_____

1

SMITH, *Circuit Judge.*

George Keahey ("Keahey"), an attorney, appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of Defendant Bethel Township ("Bethel Township") and individual defendants Lieutenant William Coyle ("Lieutenant Coyle"), Officer James Register ("Officer Register"), Officer Brian Buck ("Officer Buck"), and Corporal Christopher Kimball ("Corporal Kimball," and collectively, the "Individual Officers") in a lawsuit brought by Keahey for alleged civil rights violations stemming from the Bethel Township Police Department's response to a domestic dispute between Keahey and his former wife. For the reasons set forth below, we will affirm.

On November 25, 2009, the Bethel Township Police Department received a report of a domestic disturbance at the residence that Keahey shared with his then-wife, Wendy Keahey ("Wendy"). Officer Register and Officer Buck responded to the call. When the officers arrived, Wendy was very agitated and told them that she wanted Keahey out of the house. The officers stated that either Keahey or Wendy needed to leave the house for the evening as they could not both stay there that night. Keahey claims that after several minutes of discussion, the officers firmly told him to leave. The officers learned that the couple's two vehicles—a Ford F-150 truck and a Ford Mustang—were titled in Wendy's name. Wendy

2

refused to give permission for Keahey to take either of them. Because Keahey was left with no private means of transportation, Officer Register gave Keahey a ride in the back of his patrol car to a nearby McDonald's restaurant. From there, Keahey called a friend to pick him up.

The next morning, Keahey returned to the marital residence and drove off in the F-150 truck. After learning what Keahey had done, Wendy called the Bethel Township Police Department and reported that Keahey had taken the truck without her permission. She stated that she did not wish to file charges against Keahey, but that she wanted the truck returned. The Bethel Township Police Department left a message for Keahey instructing him to return the truck. Keahey, in response, indicated to the police that he had no intention of returning the truck. The Bethel Township Police Department then placed a "stop and hold" order on the truck. However, the following day, the police conferred with the Delaware County District Attorney's Office regarding Keahey's use of the truck and decided to remove the "stop and hold" order. Keahey was not stopped or arrested for his use of the truck.

On January 23, 2010, Wendy discovered that Keahey had parked the truck at a friend's residence in Alden Borough, Delaware County, Pennsylvania. She surreptitiously drove away with the truck. Upon discovering the truck's disappearance, Keahey called Bethel Township police and spoke with Corporal

3

Kimball. Keahey told Corporal Kimball that he wanted the truck returned to him, and that it contained his personal belongings and some important legal papers. Corporal Kimball spoke with Wendy that same day and she told him that she would return Keahey's belongings and papers but intended to keep the truck. When Keahey was advised of this, he wanted Wendy charged with theft. Corporal Kimball told Keahey that, if he wished to file charges against Wendy, he should contact the police department in Alden Borough where the alleged theft had occurred.

The following day, Lieutenant Coyle informed Keahey that Wendy had dropped off the personal belongings and legal papers that were in the truck. During this conversation, Keahey apologized to Lieutenant Coyle for arguing with Corporal Kimball the previous day. Keahey also alleges that, in response to Keahey's complaints regarding alleged wrongful treatment of him by the Bethel Township Police Department, Lieutenant Coyle was placed in charge of an investigation to determine whether Keahey's rights had been violated.

On February 17, 2010, Keahey obtained an order from the Delaware County Court of Common Pleas authorizing him to use the Ford Mustang for a period of thirty days. Thirty days later, on March 19, 2010, Wendy contacted Officer Buck and informed him that Keahey had not returned the Mustang. When Officer Buck contacted Keahey about this, Keahey claimed that he had petitioned for an

4

extension of the stay order. Officer Buck requested that Keahey fax or deliver a copy of the order to the Bethel Township Police Department. Keahey refused to do so. In response, Officer Buck placed a "stop and hold" order on the Mustang, but removed the "stop and hold" order a few days later. Keahey was not stopped in the Mustang nor was he arrested for its use.

On November 18, 2011, Keahey, acting *pro se*, filed this lawsuit alleging causes of action for (1) seizure and detention without probable cause, in violation of 42 U.S.C. § 1983, (2) seizure and deprivation of property, in violation of 42 U.S.C. § 1983, (3) conspiracy to deprive Keahey of his rights, in violation of 42 U.S.C. § 1983, (4) false imprisonment, (5) harassment, and (6) malicious abuse of process. In February 2012, the District Court dismissed the harassment and malicious abuse of process claims. Defendants filed a motion for summary judgment as to the claims brought under 42 U.S.C. § 1983, the conspiracy claim, and the false imprisonment claim. In his response to Defendants' summary judgment motion, Keahey agreed to dismiss his claim for conspiracy,[1] leaving only the claims of seizure and detention without probable cause, seizure and deprivation of property, and false imprisonment. The District Court granted summary

---

[1] Keahey's suit also originally named Detective Russell Mervine, Patrol Officer Sean Bradshaw, and Patrol Officer Lou Stackeni as defendants, but in his response to Defendants' summary judgment motion, Keahey agreed to dismiss all claims against those officers.

judgment to Defendants as to each of these remaining claims. Keahey timely appealed the District Court's ruling on Defendants' summary judgment motion.[2]

Upon reviewing the record before us, we conclude that the District Court did not err in granting summary judgment to Defendants on the remaining claims. First, we agree with the District Court that Keahey failed to establish a basis for liability under 42 U.S.C. § 1983 against Bethel Township. A party seeking to impose liability under § 1983 against a municipality must show that his injury was caused by either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order for there to be municipal liability. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). Keahey alleged that Bethel Township failed to provide adequate training in handling domestic disputes to its police officers and claimed that this inadequate training gave rise to an environment in which police officers handling domestic

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*, applying the same standard as the District Court. *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013).

disputes gave preferential treatment to females over males. We agree with the District Court that the evidence does not demonstrate the existence of a "policy" or "custom" sufficient for *Monell* liability. Additionally, we agree with the District Court that Keahey failed to satisfy the causation requirement for *Monell* liability. Accordingly, the District Court did not err in granting summary judgment on this claim.

We also conclude that the District Court did not err in granting summary judgment as to Keahey's § 1983 claims against the Individual Officers. Upon reviewing the record before us, we find no indication that any of the Individual Officers violated any of Keahey's rights, privileges, or immunities secured by the Constitution, and thus there is no basis for Keahey's § 1983 claims against the officers. Additionally, even if we were to find that a constitutional violation may have occurred, we would agree with the District Court that the Individual Officers are insulated from liability for civil damages by the doctrine of qualified immunity because "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012).

Finally, we conclude that the District Court did not err in granting summary judgment on Keahey's claim for false imprisonment. Under Pennsylvania law, false imprisonment is the unlawful detention of another person. *Renk v. City of*

7

*Pittsburgh,* 537 Pa. 68, 641 A.2d 289, 293 (1994). False imprisonment requires that (1) the defendant acted with intent to confine plaintiff within fixed boundaries, (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement, and (3) plaintiff was conscious of the confinement or harmed by it. *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109, 111 n.2 (1971). We agree with the District Court that Keahey's allegations are insufficient to satisfy the standard for false imprisonment because there is no indication that any of the Individual Officers acted with intent to confine Keahey within fixed boundaries nor is there evidence that the Individual Officers' actions resulted in Keahey's confinement. Thus, we conclude that the District Court did not err in granting summary judgment to Defendants on this claim.

Accordingly, we will affirm.