

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-1-2008

# Miller v. Clinton

Precedential or Non-Precedential: Precedential

Docket No. 07-2105

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Miller v. Clinton" (2008). *2008 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2105

RITA MILLER

v.

CLINTON COUNTY;
HONORABLE RICHARD SAXTON

Honorable Richard N. Saxton,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civ. Action No. 06-cv-00398)
District Court: Judge John E. Jones, III

Argued May 13, 2008

BEFORE: McKEE, ROTH, <u>Circuit Judges,</u>
and PADOVA, <u>District Court Judge</u><sup>*</sup>

(Opinion filed: October 1, 2008)


A. TAYLOR WILLIAMS, ESQ. (Argued)
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

<u>Attorney for Appellant Honorable Richard N. Saxton</u>


JOSEPH P. GREEN, ESQ. (Argued)
LEE, GREEN, & REITER, INC.
115 East High Street
P.O. Box 179
Bellefonte, Pa. 16823

<u>Attorney for Appellee Clinton County</u>

---

[*]The Honorable John R. Padova, Senior District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

JOSEPH F. ORSO, III, ESQ. (Argued)
CASALE & BONNER
33 West Third Street
Suite 202
Williamsport, PA 17701

Attorney for Appellee Rita Miller

---

OPINION

---

McKEE, Circuit Judge.

Rita Miller, a former employee of the Clinton County Probation office, brought this civil rights action against the President Judge of the Court of Common Pleas of Clinton County, Pennsylvania, Richard Saxton, pursuant to 42 U.S.C. § 1983. Miller's complaint asserts that Judge Saxton terminated her employment in violation of her First Amendment right to free speech, and her Fourteenth Amendment right to due process.[1]

---

[1]The First Amendment guarantee of free speech is incorporated into the Fourteenth Amendment's due process clause and therefore applicable against the states. *See Phillips v. Keyport*, 107 F.3d 164, 183 (3d Cir. 1997). Miller also stated a separate cause of action for an alleged due process violation.

3

Judge Saxton moved to dismiss Miller's complaint for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). Alternatively, he claimed that he was entitled to qualified immunity even if Miller's complaint stated a cause of action. He also moved for a more definite statement pursuant to Fed. R. Civ. P. 12(e) in order to resolve any issue of fact that may have precluded a grant of qualified immunity. The district court denied Judge Saxton's motion to dismiss as well as his Rule 12(e) motion for a more definite statement and this appeal followed. For the following reasons, we will reverse.

## I. Factual Background

Miller was employed as an Adult Probation Officer by the Clinton County Probation Office. The Probation Office's employees had a collective bargaining agreement with the County. According to Miller, one of her supervisors was ineffective and unprofessional. The supervisor allegedly referred to probationers as "scum," and openly stated that they did not deserve the money that the Probation Office spent on them.

On January 22, 2006, Miller wrote a letter to Judge Saxton expressing her dissatisfaction with the Probation Office. The letter was very short. In the letter, Miller stated:

---

She argues that she has a property interest in her employment and that she was deprived of that interest without due process of law in violation of the Fourteenth Amendment.

> [T]he reason I am writing to you now is that I can no longer work under the stressful conditions which must endure since Mrs. Foresman has become my supervisor. I have tolerated intimidation and hostility from Mr. Rosamilia numerous times throughout my employment with the county. I know that you are friends with both of them and you may not appreciate my candor but I believe that the time has come to explain my position to the court.

Miller also complained that Supervisor Foresman asked her to identify probationers whose restitution payments were in arrears, and she complained about Foresman suspending her because her clients were delinquent in those payments. She claimed that there was a difference in philosophy between herself and Foresman. According to the letter, that difference was that Miller "believes in rehabilitation for most clients, [whereas Foresman] believes [the clients] are scum and no money should be wasted on them.

Judge Saxton fired Miller immediately after receiving her letter. Soon thereafter, Miller brought this suit under § 1983. She alleged a constitutionally protected property

5

interest in her continued employment, and claimed that the failure to provide her with adequate notice and opportunity to respond was a violation of the Fourteenth Amendment's guarantee of due process.   She also asserted that her expression was protected under the First Amendment's guarantee of free speech and that she had been improperly terminated for exercising her right to free speech.

As we noted at the outset, Judge Saxton moved to dismiss Miller's claims under Federal Rule of Civil Procedure 12(b)(6).  He also claimed immunity from suit.  For reasons that are not at all apparent on this record, Miller did not attach her letter to her complaint. However, Judge Saxton appended it to his motion to dismiss and asked the court to convert that motion to a motion for summary judgment in the alternative. In addition, he asked the court to require Miller to provide a more definitive statement of the basis for her claim pursuant to Fed. R. Civ. P 12(e), if his motion to dismiss or for summary judgment was denied.

The district court denied Judge Saxton's 12(b)(6) motion and refused to convert it to a summary judgment motion.   The court concluded that Judge Saxton had not established that he was entitled to qualified immunity because the record did not support his claim that he had not violated Miller's clearly established constitutional rights.   Although the court also ruled that the pleadings were insufficient to determine if Miller's termination was the result of retaliation for protected speech, the court refused to consider Miller's

letter appended to Judge Saxton's motion to dismiss. The district court ruled that the letter did not sufficiently supplement the record to allow for summary judgment. The court also denied Judge Saxton's Rule 12(e) motion. Finally, the court concluded that Miller's due process claim could not be dismissed at the pleading stage because she alleged that the terms of her employment were governed by the terms of a collective bargaining agreement. This appeal followed.

## II. Jurisdiction and Standard of Review

A denial of qualified immunity is a "final judgment" subject to immediate appeal within the meaning of 28 U.S.C. § 1291. *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). Thus, we have jurisdiction to review the district court's denial of Judge Saxton's motion to dismiss or for summary judgment. Our review is plenary. *Doe v. Groody,* 361 F.3d 232, 237 (3d Cir. 2004).

## III. Discussion

The doctrine of qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not merely a defense, but is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citation omitted). Therefore, any claim of

7

qualified immunity must be resolved at the earliest possible stage of litigation. *Id.* at 201.

In *Saucier*, the Supreme Court made clear that claims for qualified immunity are to be evaluated using a two-step process. *Id.* at 201. "First, [we] must decide whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2003). "Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established." *Id.*

Based on our phased inquiry under *Saucier*, we conclude the district court erred in not dismissing Miller's complaint because her allegations do not establish either a violation of her right to free speech under the First Amendment, or a denial of due process. As the Court explained in *Saucier*, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." 533 U.S. at 201.

## A. First Amendment Retalion Claim

In *Pickering v. Bd. of Educ.*, 391 U.S. 563, 570 (1968), the Supreme Court first held that a public employee does not relinquish First Amendment rights to comment on matters of

8

public interest by virtue of government employment. Thus, a public employer may not discharge an employee for a reason that infringes upon that employee's constitutionally protected interest in the freedom of speech. *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). Nevertheless, public employers are still employers, and they therefore have the same concern for efficiency and the need to review and evaluate employees as any other employer in order to ensure that the actions of employees do not interfere with the performance of public functions. *Id.* at 383-89. On the other hand, the Court recognized that "the threat of dismissal from public employment is . . . a potent means of inhibiting speech." *Id.* at 384 (quoting *Pickering*, 391 U.S. at 574).

Thus, in order to determine if a public employer's termination of an employee violates the constitutional guarantee of free speech, we must "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer], in promoting the efficiency of the public services it performs through its employee." *Pickering*, 391 U.S. at 568; *see also Connick v. Myers*, 461 U.S. 138, 140 (1983).

That balance turns on a three-prong inquiry. *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995). Accordingly, in order for Miller to establish an unconstitutional firing, she must establish that her speech was protected, and that it was a motivating factor in the alleged retaliatory dismissal. *Id* (citations omitted). If she does so, Judge Saxton must then establish that he would have taken the

same employment action "even in the absence of the protected conduct." *Id.* (citation omitted).

At this stage, we are only concerned with the first part of that inquiry - whether the speech was protected; and that is solely a question of law. To be protected, the speech must implicate a matter of public concern and must outweigh the employer's interest in the effective operations of its public services. Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community. *Connick*, 461 U.S. at 146-48. If the speech touches on a matter of public concern, we must then balance the employee's interest in engaging in her speech with the employer's countervailing interests, including the employer's prerogative of removing employees whose conduct impairs performance; and concerns for the morale of the workplace, harmonious relationships among co-workers, and the regular operation of the enterprise. *Id.* at 151. The balancing we must undertake is a fact-intensive inquiry that requires consideration of the entire record, and must yield different results depending on the relative strengths of the issue of public concern and the employer's interest. *Id.* at 152. No one factor controls the inquiry.

Our inquiry is guided by the Supreme Court's resolution of these competing interests in *Connick, supra*. Sheila Myers was an Assistant District Attorney in New Orleans who strongly opposed the District Attorney, Harry Connick, in his plan to transfer her to another district. She

10

voiced that opposition to Connick's policies to her direct supervisor who told her that others did not share her concerns. Myers responded by distributing a questionnaire that solicited the view of her fellow staff members concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work on political campaigns. Sometime after the questionnaire was circulated, Myers' supervisor told Connick that it was causing a mini-insurrection in the office. Connick responded by firing Myers for refusing to accept the transfer. He also told her that circulating the questionnaire was an act of insubordination. Myers responded by bringing a civil rights action under § 1983 in which she alleged that the firing violated her First Amendment right of free speech. The district court agreed and ordered her reinstated with compensation including attorney's fees. The court concluded that she had actually been fired for circulating the questionnaire, that the questionnaire involved matters of public concern, and that the "state had not 'clearly demonstrated' that [it] 'substantially interfered' with the operations of the District Attorney's office." *Id.* at 142. Connick appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed on the basis of the district court's opinion. Connick then sought review in the Supreme Court by way of certiorari, which was granted.

The Supreme Court began its analysis by stating that "[f]or at least 15 years, it has been settled that a state cannot condition public employment on a basis that infringes the

11

employee's constitutionally protected interest in freedom of expression." *Id.* The Court then explained that in order to resolve Myers' claim, it must (as explained in *Pickering*), "seek a balance between the interests of the [employee], as citizen, in commenting upon matters of public concern and the interest of the State, as an employer." *Id.* (internal quotation marks omitted). The Court recognized the state's interest as employer in "'promoting efficiency of the public services it performs through its employees[.]'" *Id.* (quoting *Pickering*, 391 U.S. at 568).

After examining Myers' questionnaire, and the surrounding circumstances, the Court concluded that questions pertaining to the transfer policy, her fellow employees' confidence and trust in their supervisors, office morale, and the need for a grievance committee were merely extensions of Myers' dispute over her transfer. *Id.* at 147-48. Those questions were not intended to shed light on any actual or potential wrongdoing or breach of the public trust by the district attorney's office. Rather, they were merely an expression of Myers' personal grievance against Connick. Accordingly, they did not constitute matters of public concern. *Id.*

The Court believed that the only expression touching upon a matter of public concern was the inquiry into whether Connick pressured employees to work on political campaigns. *Id.* at 149. However, after viewing the statement in context and considering the circumstances in which she circulated it, the Court held that one expression of public concern did not

outweigh the District Attorney's interest in the efficient operation of his office because the questionnaire as a whole was of such limited value to the public. *Id*. at 154. Taken as a whole, it challenged the authority of Myers' supervisor, questioned the application of a transfer policy as applied to her, and undermined the close working relationships necessary for the effective functioning of the District Attorney's office. *Id*. That did not outweigh the employer's right to terminate Myers.[2] *Id*.

Here, Miller's statements that the Clinton County Probation office was being run ineffectively, and that her supervisors called probation clients "scum" undoubtedly refer to matters of public concern. *Connick,* 461 U.S. at 146 stating that speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social, or other concern to the community). Indeed, the public concern over the manner in which a probation office

---

[2] The Court explained that the inquiry necessarily involves a sliding scale. The employer has no obligation to wait for the disruption to occur to terminate the employee, so long as the speech has significant potential to cause disruption relative to its value. *Id*. at 152. On the other hand, the Court stated that if the questionnaire more substantially involved issues of public concern, a greater showing of disruption would have been needed to justify Myers' termination. *Id.* In other words, the amount of disruption a  public employer has to tolerate is directly proportional to the importance of the disputed speech to the public.

supervises probationers in the criminal justice system is obvious.

Connick and its progeny illustrate the extent to which we must view Miller's statements in context with the entire letter. We can not "cherry pick" something that may impact the public while ignoring the manner and context in which that statement was made or that public concern expressed. Our inquiry must also consider the form and circumstance of the speech in question.

The district court refused to consider the entirety of Miller's letter because it did not believe that Judge Saxton's appending the letter to his motion was sufficient to convert the motion to dismiss into a motion for summary judgment. We disagree. A "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1992).[3]

Miller's claims are undisputably based on her January 26, 2006 letter to President Judge Saxton, and only upon that letter. Moreover, in her complaint, Miller appropriately

---

[3] In *Pension Benefit Guaranty*, we reasoned that any other rule would allow a "plaintiff with a legally deficient claim to survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.*

makes numerous references to the letter as the entirety of her speech is contained in it.[4] We find no reason why the district court should not have considered the letter in deciding the motion to dismiss, or in converting the motion to a motion for summary judgment. We will therefore consider the entirety of the letter in this appeal. *See Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d at 1196-97 (considering a document on appeal that the district court did not consider while deciding a motion to dismiss).[5]

Upon considering the entirety of Miller's letter it is obvious that, although a small portion of the letter touches upon a matter of public concern, the context in which the statement occurs establishes that the speech is not protected.

---

[4]Neither the authenticity, nor the accuracy of that document was in dispute.

[5] Our conclusion that the district court should have considered Miller's entire letter makes it unnecessary to decide whether the district court should have granted Judge Saxton's motion under Rule 12(e) for a more definitive statement. However, we take this opportunity to reemphasize the importance of granting a motion under Rule 12(e) where it furthers the considerations underlying qualified immunity. *Thomas v. Independence*, 463 F.3d 285, 301 (3d Cir. 2006) (highlighting the usefulness of Rule 12(e) motions as part of a district court's obligation to "avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue.")

15

Miller's letter focused upon her private grievances as an employee. Her statements about the ineffective operation of the Probation Office, and her concerns about her supervisor's comments that the probationers are "scum," are collateral to the thrust of her complaint. She quite clearly states: "[T]he reason I am writing to you now is that I can no longer work under the stressful conditions which must endure since Mrs. Foresman has become my supervisor." That declaration provides the context for all that follows. Miller was upset with Foresman's supervision of her, and could no longer tolerate being supervised by her. In that context, the brief references to an issue of public concern she can hardly be interpreted as manifesting anything other than a multi-faceted personal "gripe" not unlike that voiced in Myers' questionnaire. *See Connick*, 461 U.S. at 153 ("Myers acknowledges that it is no coincidence that the questionnaire followed upon the heels of the transfer notice.") The personal context in which Miller's letter arose, in addition to the tangential connection between the issues of public concern and the overall thrust of the letter so minimizes any public concern in the subject of her expression as to tip the First Amendment balance in favor of her employer.

Miller's letter harshly criticizes two of her direct supervisors. She accuses her immediate supervisor of lying on two separate occasions and taking credit for the work of other co-workers. Miller also seemingly offers an ultimatum to the Chief Judge, stating that "she is not sure she can return [to her job] as long as Mr. Rosamilia and Mrs. Foresman continue to work there." Miller's letter is even disrespectful

16

to Judge Saxton.  In one exchange, she accuses her supervisor of lying and performing her job inadequately, but summarizes the passage by telling the Judge, "apparently that is the kind of Probation Officer you and Mr. Rosamilia [another supervisor] admire."

Miller's letter is therefore analogous to the speech at issue in *Connick*.  In launching into an attack on management and her supervisors, Miller's letter did manage to brush ever so gently against a matter of public concern just like Myers' questionnaire in *Connick*.  However, that seemingly serendipitous encounter does not convert her personal grievance into protected speech.[6]

---

[6]We nevertheless think it imperative to caution that we in no way suggest that speech which is otherwise public in nature can be sanctioned merely because it arises in the context of personal dissatisfaction or a personal grievance.  In fact, common sense suggests that most employees will not speak out and criticize their employer if all is going well for them personally and they have no "axe to grind."  Nor do we suggest that an employer can rely solely upon the disruption that may follow when an employee speaks on a matter of public concern merely because the employee is motivated by personal dissatisfaction with his/her employment.  It is not the grinding of the proverbial axe that removes the protection of the First Amendment, it is the private nature of the employee's speech.  Care must always be taken not to confuse the two inquiries.  *See O'Donnell v. Yanchulis*, 875 F.2d 1061, 1062 (3d Cir. 1989) ("[I]t would be absurd to hold that First Amendment generally authorizes

17

Since Miller's speech is unprotected, she cannot establish a First Amendment retaliation claim. That cause of action should therefore have been dismissed because Judge Saxton is entitled to qualified immunity. Her due process claims also fail to state a constitutional violation and should have been dismissed for the same reason.

## B. Due Process Claims[7]

The District Court also erred in not dismissing Miller's due process claim. Miller alleged that her termination occurred without notice or opportunity to respond, and resulted in a deprivation of her property interest in continued employment "without due process of law" in violation of the Fourteenth Amendment.

The first step in analyzing a due process claim is to determine whether the "asserted individual interest ... [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citations and quotations omitted). Judge Saxton contends that Miller possessed no interest in her employment protected by the Fourteenth Amendment because, under Pennsylvania law, as a public employee her employment was at-will. In *Elmore v. Cleary*, 399 F.3d 279 (3d Cir. 2005), we held that an public employee does not have any property interest in her employment within the meaning of the Fourteenth Amendment because such an

---

corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office.").

[7]As noted earlier, Miller claims a right to notice and an opportunity to be heard before being terminated as well as a substantive due process property interest in employment. Our discussion pertains equally to both aspects of her due process claim.

18

employee serves solely at the pleasure of her public employer, and can be dismissed at anytime for any legal reason or for no reason at all.  *But see Clark v. Modern Group Ltd.*, 9 F.3d 321, 323, 327-28 (3d Cir. 1993) (recognizing exception for terminations against public policy, such as for a discriminatory purpose)**.**

In fact, we concluded in *Elmore* that Pennsylvania law precludes local governments from employing workers on any term other than as an at-will employee unless explicit enabling legislation to the contrary is enacted by the Pennsylvania General Assembly.  *Id.* at 282-83 (citing *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 334 (Pa. 1995).  We stated, "tenure in public government, in the sense of having a claim to employment which precludes dismissal on a summary basis is, where it exists, a matter of legislative grace."  *Id.* at 283 (quotation omitted).  Therefore, we rejected the argument that a personnel policy handbook conferred employment that could be only be terminated for just-cause.

Here, Miller cites no enabling legislation that would exempt workers in Clinton County from the general rule that public employees are at-will employees.  Instead, Miller attempts to rely on the existence of a collective bargaining agreement which contains a provison that termination can occur only for "just cause" and argues that the agreement gives rise to a protected property interest in her employment.  The district court accepted that argument and denied Judge Saxton's motion to dismiss on that basis.  It erred in doing so.

Pennsylvania's Public Employe Relations Act ("PERA"), 43 P. S. §§ 1101.101 *et seq.*, which allows collective bargaining between public employees and local governments, limits the matters that can be subject to collective bargaining to "wages, hours, and other terms and conditions of employment."  *See* 43 P.S. § 1101.701.  The PERA does not undermine the general rule that public employees in Pennsylvania are at-will employees.  *See*

*Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995) (holding that the rule that a public employee is an employee-at-will "has not been abrogated by either this Court or by the legislature").[8]

Moreover, Pennsylvania courts have interpreted the statutory scheme at issue, and have conclusively held that a court employee's right to collectively bargain does not affect the inherent right of judges to hire, discharge, and supervise their employees. *County of Lehigh v. Pennsylvania Labor Relations Bd.*, 489 A.2d 1325, 1327 (Pa. 1985). In fact, the Supreme Court of Pennsylvania has explicitly stated on separate occasions that "matters affecting the hiring, discharge, and supervisory powers of the public employer are not subject to collective bargaining," and that the rights of judges to hire, discharge, and supervise court employees are not affected by collective bargaining. *Id.* at 1329; *see also Ellenbogen v. County of Allegheny*, 388 A.2d 730, 734 (Pa. 1978). Miller's due process argument completely ignores this body of law.

---

[8]We note that in *Com., Labor Relations Bd v. Franklin Twp. Municipal Sanitary Auth.*, 395 A.2d 606, 608 (Pa. Commw. Ct. 1978), the Commonwealth Court held that the statutes authorizing collective bargaining between public employees and local government units "clearly contemplate[] that public employers may agree in a collective bargaining agreement to limit its otherwise unfettered power to dismiss employees at will." However, in light of the Pennsylvania Supreme Court's statement in *Stumpp*, 658 A.2d at 335, that the legislature has not abrogated the general rule that public employees are employees-at-will, we do not believe that the Commonwealth Court's statement in *Franklin Twp.* changes our analysis of Miller's due process claim. Indeed, in *Stumpp*, the Pennsylvania Supreme Court expressly stated: "municipal entities lack the authority to confer employment tenure by contract." 658 A.2d at 335.

Accordingly, the collective bargaining agreement that Miller relies upon could not confer any property interest in her employment or elevate her to something other than an employee-at-will under Pennsylvania law, and she cannot, therefore, establish the violation of a constitutional right which is a condition precedent to a claim under § 1983.[9]

_____

[9]The existence of a termination for just cause only provision in the collective bargaining agreement does not does not change this result. The power to appoint necessary personnel is inherent in the judicial power. *Sweet v. Pennsylvania Labor Relations Board*, 322 A.2d 362 (Pa. 1974). "The authority to supervise and to discharge court-appointed employees is not only a necessary corollary to this appointment power but is also essential to the maintenance of an independent judiciary." *County of Lehigh*, 489 A.2d at 1327 (citing *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 388 A.2d 736 (Pa. 1978), and *Ellenbogen v. County of Allegheny*, 388 A.2d 730 (Pa. 1978). In Pennsylvania, county commissioners "are the exclusive representative of management in representation proceedings and collective bargaining under [the PERA] involving court employees paid from county funds." *Ellenbogen*, 388 A.2d at 735. However, the exclusive authority of county commissioners to negotiate "wages, hours, and other terms and conditions of employment," 43 P.S. § 1101.701, does not affect the inherent right of judges to hire, discharge and supervise court employees. *Id.*; *see also County of Lehigh*, 489 A.2d at 1329 ("[C]ounty commissioners are not prohibited from negotiating 'wages, hours and other terms and conditions of employment" provided such terms do not impinge upon judicial control of hiring, discharge, and supervision in some concrete manner."). Moreover, "the judiciary has the inherent power to prevent any actual impairment of its independence created by the collective bargaining process." *County of Lehigh*, at 1329 (citations omitted). Therefore, even if the parties to the collective bargaining agreement here intended to grant "just cause" employment status to court employees, there is absolutely no authority to do so.

21

### III. Conclusion

For the reasons set forth above, we conclude that Miller cannot establish that Judge Saxton's conduct violated her constitutional rights, and that Judge Saxton is therefore entitled to qualified immunity. We will therefore vacate the order of the district court, and remand with instructions to dismiss Miller's complaint.