**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1013
_____

CURTIS M. HERMAN;
AUSTIN JAMES ASSOCIATES, INC.,

Appellants,

v.

STEVEN J. HARMAN;
UNDERGROUND STORAGE TANK INDEMNIFICATION BOARD MEMBERS;
KERRY L. YOUNDT; ICF INCORPORATED, LLC;
MICHAEL F. CONSEDINE; E. CHRISTOPHER ABRUZZO;
W. MICHAEL SMITH; E. BRUCE SHELLER; J. STEPHEN HIEBER;
LARRY T. MORTON; NANCY MARICONDI; STEPHANIE C. WISSMAN
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-13-cv-01118)
District Judge: Honorable James M. Munley
_____

Submitted under Third Circuit LAR 34.1(a)
October 31, 2014

Before: MCKEE, *Chief Judge*, GREENAWAY, JR. and KRAUSE, *Circuit Judges*

(Filed: November 19, 2014)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, Circuit Judge.

During the period relevant to this appeal, Curtis M. Herman and Austin James Associates, Inc. (collectively "Appellants") were government contractors who evaluated claims, provided litigation support, developed strategy on major projects, and provided expert opinions on technical and budgetary questions for Pennsylvania's Underground Storage Tank Indemnification Fund (the "Tank Fund"), a state agency that provides payments to owners of underground storage tanks to remediate releases of hazardous substances.[1]  Appellants challenge the dismissal of their First Amendment retaliation claim, which stems from the non-renewal of their contract by the Tank Fund.  We affirm because the speech at issue did not address a matter of public concern and thus was not constitutionally protected.[2]

The controversy here emanates from gasoline leaks at a station run by Leroy and Mary Musser.  In September 2003, the Mussers contracted with Appellants to remediate the site of a 1997 fuel leak.  Later that month, the Mussers and the Tank Fund reached a final settlement and release agreement that included a $1.208 million payment to fund

_____

[1] Appellants were technically subcontractors hired by ICF, Inc., the Tank Fund's third party administrator responsible for investigating all Tank Fund claims.  The Tank Fund authorized ICF, Inc. to hire firms like Appellants' to investigate claims and provide technical services.  The contractor/subcontractor distinction, however, is not pertinent to our analysis.  For ease of reference, we refer to Appellants as "government contractors" who contracted directly with the Tank Fund.

[2] We have jurisdiction to hear the appeal under 28 U.S.C § 1291.  Our review of a district court's decision to grant a motion to dismiss is plenary.  *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004).  Because we write for the parties, we recite only those facts necessary to our conclusion.

remediation; the Mussers distributed this payment to Appellants. Eight years later, the Mussers filed another claim with the Tank Fund, ostensibly for a 1999 leak at their station, with an estimated additional remediation cost of approximately $1 million. The Tank Fund denied the new claim, finding that it was included in the 2003 release. The Mussers appealed.

While the Mussers technically filed the claim and appeal, Appellants actually funded and prosecuted them after determining that fully remediating the Mussers' site was going to be significantly more expensive than provided for in their 2003 contract. Appellants pursued the claim despite a conflict-of-interest provision in their contract with the Tank Fund, which prohibited Appellants from "representation of a client in regard to a claim against [the Tank Fund] on a release."[3] As a result, the Tank Fund did not renew Appellants' contract.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."[4] This protection shields government contractors from adverse employment actions that result

---

[3] App. 182a.

[4] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

3

from speech on matters of public concern.[5] We use a three-part test to determine whether speech by government contractors is constitutionally protected: (1) whether they were speaking as citizens rather than as public contractors discharging their contractual duties; (2) whether their speech "address[ed] a matter of public concern as opposed to a personal interest;" and (3) whether the state had "an adequate justification for treating [them] differently from any other member of the general public as a result of" their speech.[6]

Appellants fail the second and third parts of our test. Speech is of public concern when it is "fairly considered as relating to any matter of political, social, or other concern to the community."[7] While there is, of course, a public interest in the ability of businesses to apply to and then appeal the decision of a state agency without repercussion, it is of no public concern that a contractor of that agency—whom the agency relies upon for litigation support and other expertise—funds and prosecutes a million-dollar claim against the agency on behalf of its private client. Here, the Mussers could have pursued their claim without Appellants prosecuting it for them, and

---

[5] *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674-75, 684-85 (1996).

[6] *Montone v. City of Jersey City*, 709 F.3d 181, 193 (3d Cir. 2013) (internal quotation marks omitted).

[7] *Connick v. Myers*, 461 U.S. 138, 146, 148 (1983) (no matter of public concern against District Attorney when employee's complaints "did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities" and did not "seek to bring to light actual or potential wrongdoing or breach of public trust on the part of [the District Attorney] and others"); *Gorum v. Sessoms*, 561 F.3d 179, 187 (3d Cir. 2009) ("[Appellant's] assistance . . . did not involve a matter of public concern. Instead, his 'speech' during [a] disciplinary hearing related to the personal grievance of one student.").

Appellants pleaded nothing that suggests that their speech exposed the Tank Fund as being run contrary to the public interest. Moreover, the Tank Fund, a state agency that provides seven-figure claim payments and relies on expert opinions to make decisions about those claims, had ample justification for treating Appellants differently than members of the public by hewing to a strong conflict-of-interest policy.[8]

In sum, we conclude that while Appellants' speech "manage[d] to brush ever so gently against a matter of public concern,"[9] it was the private contractual concern of a business, which violated a sensible conflict-of-interest policy. Accordingly, the District Court properly dismissed the First Amendment claim.

---

[8] *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) (state employers may restrict speech if such restriction allows them "to operate efficiently and effectively"); *see also Piscottano v. Murphy*, 511 F.3d 247, 277 (2d Cir. 2007) (holding that avoiding actual or perceived conflict of interest constitutes legitimate governmental interest).

[9] *Miller v. Clinton Cnty.*, 544 F.3d 542, 551 (3d Cir. 2008).