NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2637
_____

DAVID SCRIP,
Appellant

v.

DEBBIE O'DELL SENECA, in her individual capacity as
President of the Court of Common Pleas of Washington County;
THOMAS JESS, in his official and individual capacity as both Director of
Probation Services and Deputy Court Administrator of the Court of
Common Pleas of Washington County; DANIEL CLEMENTS, in his
official and individual capacity as Director of the Washington
County Juvenile Probation Office/Chief Probation Officer;
COUNTY OF WASHINGTON
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-14-cv-01215
District Judge: The Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 18, 2016

Before: SMITH, HARDIMAN, and NYGAARD, *Circuit Judges*

(Filed: June 7, 2016)
_____

OPINION*

_____

SMITH, *Circuit Judge.*

This case comes to us on appeal from the District Court's grant of Appellees' motion to dismiss Appellant's First Amendment retaliation claim.[1]  The District Court adopted the magistrate judge's report and recommendation in its entirety, which held that Appellant's speech was not private citizen speech, and thus not entitled to First Amendment protection.  In the alternative, the report and recommendation held that Appellant failed to establish a causal connection between his speech and the termination of his employment.  For the reasons stated below, we will affirm on causation grounds.

**I.**[2]

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Appellant's complaint raises several other claims.  However, he does not contest the dismissal of the other federal claims.  He also does not contest the decision to remand the state law claims to the Court of Common Pleas of Washington County, Pennsylvania if we affirm on First Amendment grounds.  Thus, these issues are not before us and we express no opinion on their merits.  Appellant does operate under the mistaken belief that the District Court granted Appellees motion to strike certain allegations.  However, this is one of the state law claims that was remanded to the Court of Common Pleas, and we will not address its merits.

[2] This case is before us on an appeal from the District Court's grant of a motion to dismiss for failure to state a claim.  We accept as true all well-pled factual allegations and view them in the light most favorable to the plaintiff.  *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 182 (3d Cir. 2012).  Thus, the facts described herein are taken from the complaint and the exhibits to the complaint upon which the complaint relies.

Appellant David Scrip worked as a probation officer in the Washington County Juvenile Probation Department for 25 years. He claims that Appellee Daniel Clements, his superior and the Chief Probation Officer of Washington County, was having an intimate relationship with an employee of Abraxas, a placement facility for juvenile offenders. As the relationship progressed, Clements began to pressure his subordinates, including Scrip, to recommend placement of juveniles into Abraxas even when such recommendations were not proper for the children in question. The probation officers reluctantly made the recommendations, which the Juvenile Master and Judge "unwittingly approved." Appellee Thomas Jess, the Director of Probation Services and Deputy Court Administrator of Washington County, was allegedly aware of this conflict of interest but was nonetheless supportive of Clements' actions.

Troubled by this arrangement, Scrip sent an anonymous letter on an unknown date complaining of this conduct to Appellee Debbie O'Dell Seneca, then the President Judge of the Court of Common Pleas of Washington County. The letter states that it was also sent to

> PA Supreme Court Chief Justice Ronald Castile [sic], Federal Attorney General [sic] for Western District of Pennsylvania David Hickton, PA Attorney General Linda Kelly, JCJC Executive Director Jim Anderson, Honorable Arthur Grimm, Senior Judge, Berks County, Judge Janet Moshetta Bell, Juvenile Master Dennis Paluso, Deputy Court Administrator Timothy McCullough and Probation Union President Kelly Boyd.

JA Vol. II at 27.

3

The letter detailed the inappropriate relationship between Clements and the Abraxas employee and said that it was sent on behalf of all juvenile probation officers who, in bringing this behavior to Seneca's attention, were acting pursuant to the Code of Conduct for Employees of the Unified Justice System. The letter further claimed that as a result of the pressure to recommend placement in Abraxas, overall placement in Abraxas increased over the preceding three years. The relationship also apparently led to growing resentment within the office, with Clements becoming "unglued" and creating a hostile work environment.

As a result of this letter, the Administrative Office of the Pennsylvania Courts appointed James Rieland to investigate the allegations raised therein. Scrip sent Rieland a second, signed letter dated July 30, 2012, giving him an update on "recent developments." In August of 2012, Seneca told the juvenile probation staff that Rieland's investigation revealed no improper conduct. The complaint alleges that Rieland leaked Appellant's name to the Appellees, who in turn retaliated against him. Specifically, Scrip claims that, as a result of missing a telephone call while on duty, he was subjected to "disparate treatment" in August of 2012 and that he was also somehow disciplined on two occasions for committing perjury, which he says he did not commit. The dates of the discipline for committing perjury are not given in the complaint. The retaliation culminated in Scrip's termination on February 18, 2014. Scrip filed suit.

4

After the District Court adopted the magistrate judge's report and recommendation and granted the motion to dismiss, this timely appeal followed.[3]

## II.

Our review of a motion to dismiss is plenary, and we must accept as true all well-pled factual allegations and view them in the light most favorable to the plaintiff. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 182 (3d Cir. 2012). When evaluating a motion to dismiss, we are not limited to the complaint, and we may also review any attached documents that the complaint is based upon: here the two letters. *Miller v. Clinton Cty.*, 544 F.3d 542, 550 (3d Cir. 2008).

"To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014).

At the onset, we note that whether Scrip's speech was protected by the First Amendment poses an interesting question. Neither the Supreme Court nor the Third Circuit has ruled on whether speech that occurs within the workplace, but outside the "chain of command" is official speech (which is not entitled to First Amendment protection), or private citizen speech (which is). *Garcetti v. Ceballos*, 547 U.S. 410, 419

---

[3] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

5

(2006). Other circuits have adopted differing approaches to this issue in the wake of *Garcetti*. *Compare Dahlia v. Rodriguez*, 735 F.3d 1060, 1074 (9th Cir. 2013) ("[W]hether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties."), *and Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008) ("The question is how high within an organization an employee's reporting responsibilities extend."), *with Mpoy v. Rhee*, 758 F.3d 285, 294 (D.C. Cir. 2014) ("[W]hether speech is made inside or outside a chain of command may be a contextual factor in determining whether the employee made it to report interference with job responsibilities.").

Scrip's letter, while largely contained within the state judiciary was certainly sent outside of the chain of command – it was sent to the Chief Justice of the Pennsylvania Supreme Court, the executive director of the juvenile courts, and other judges outside of Washington County. Regardless of which approach we will take in the future, it appears that the magistrate judge gave this factor too little import, likely because Scrip raised the "chain of command" argument in a very cursory manner.[4] Nonetheless, we do not need

---

1343. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[4] That the letter was also allegedly sent to the U.S. Attorney for the Western District of Pennsylvania and the state Attorney General, neither of whom are employees of the state judiciary, is also important to the official versus private speech analysis. The complaint does not even mention this, and the magistrate judge ignored it. Hopefully future litigants will realize that the audience of their speech is an important consideration in determining whether speech is "official" or "citizen" speech. *Compare Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding that speech was official when the plaintiff "spoke as a prosecutor fulfilling a responsibility to advise his supervisor"), *with*

to decide the appropriate standard, or even whether the speech is protected by the First Amendment.

Instead, we will affirm on causation grounds.[5]  Assuming that a plaintiff has shown that he has engaged in a protected activity, he must also show "that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights[] and [] that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  In order to establish causal connection, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.*  If a plaintiff cannot make this showing, then he "must show that from 'the evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

---

*Pickering v. Bd. of Ed.*, 391 U.S. 563, 569-70 (1968) (holding that a letter to a newspaper was citizen speech in part because it was "in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher").

[5] Clements and Jess are sued in their official, as well as their individual capacities.  The suits against them in their official capacities must be dismissed on the grounds of sovereign immunity, which is jurisdictional.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 n.4, 71 (1989).  Similarly, although not a jurisdictional issue, the County of Washington is an improper defendant because Scrip has failed to identify a municipal custom or policy pursuant to which the individual Appellees were acting.  *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

Scrip cannot win based on temporal proximity alone. While it is unclear when the Appellees allegedly became aware of his letters, he claims that Rieland's investigation concluded in August of 2012. He was not terminated until February 18, 2014. Using the most generous calculation, there were at least seventeen months between the Appellees' awareness of his speech and his termination, a time period that does not support an inference of causation. *See Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) ("[W]e have held that such an inference could be drawn where two days passed between the protected activity and the alleged retaliation, but not where 19 months had elapsed." (internal citations omitted)); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015) (concluding that ten months is not sufficient in a Title VII case). On appeal, Scrip attempts to argue that the Judicial Conduct Board began an investigation into Appellee Seneca in the fall of 2013, and that "[t]his specifically supports a causal connection." However, the speech that he claims is protected is not his unknown statements made to the Judicial Conduct Board about Seneca, but instead the letter to Seneca in the summer of 2012 complaining about Clements and Jess. Thus, Scrip must show more than temporal proximity.

Scrip has also failed to show a "pattern of antagonism," which, coupled with timing, would allege a plausible causal link. He argues that he was subject to disparate treatment for missing a phone call while being an on-call worker and that he was disciplined for allegedly committing perjury during juvenile hearings, an allegation that he says is "absurd." However, he fails to say how, or when, he was disciplined in either

8

instance. He also fails to allege how he was subject to "disparate" treatment in relation to other employees when he missed the phone call.[6] These two unspecified disciplinary actions over a period of more than seventeen months do not create a "pattern of antagonism." No other facts have been alleged by which a trier of fact could infer causation, and we will affirm.[7]

---

[6] Scrip argues that the District Court improperly failed to grant him leave to amend his complaint, which he sought for the first time in his objections to the magistrate judge's report and recommendation. He has included a proposed amended complaint in the record that gives slightly more factual detail explaining how he was subjected to disparate treatment for missing the phone call. Specifically, the proposed amended complaint alleges that Scrip received a two day unpaid suspension, the loss of on-call duties, and the loss of any opportunity to work overtime hours for six months while another employee who missed a call was only given verbal counseling. The proposed amended complaint gives no further detail on the discipline that he was subjected to for the perjury. We conclude that any amendment would have been futile because the amended complaint would still not have alleged the "pattern of antagonism" necessary to survive a motion to dismiss. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

[7] We will also deny Scrip's motion filed in this Court to strike Seneca's responsive brief. Scrip claims that all arguments contained therein are waived because Seneca failed to respond to Scrip's objections to the magistrate judge's report and recommendation. He ignores the fact that Seneca had 14 days to respond to Scrip's objections, *see* Fed. R. Civ. P. 72(b)(2), but the District Court adopted the report and recommendation, thus ruling in Seneca's favor a mere 9 days after Scrip filed his objections. Moreover, we are doubtful that a party who prevails before a magistrate judge waives any argument at the appellate level by failing to file responses to the losing party's objections. Scrip also filed a motion to supplement the appendix and to file an additional reply brief to Seneca's responsive briefing. Scrip argues that Seneca untimely submitted her brief, thus warranting a second reply brief on his part. However, Seneca's brief was not untimely filed, as the Clerk's order of December 30, 2015, explicitly gave all Appellees 30 days from the date of its order to file their briefs, which Seneca did when she filed on January 29, 2016. While we grant the motion to supplement the appendix and file a supplemental reply brief, we admonish Appellant's counsel both to pay attention to our scheduling orders and to refrain from shifting responsibility for his errors to opposing counsel.