**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2478
_____

NANCY E. LEWEN,
Individually and on behalf others so situated also known as Nancy E. Shreve,
Appellant

v.

PENNSYLVANIA SOLDIERS AND SAILORS HOME, (PSSH); COMMANDANT
BARBARA RAYMOND, In her Individual and Official Capacity; PENNSYLVANIA
DEPARTMENT OF MILITARY & VETERANS AFFAIRS, (DMVA); BRIGADIER
GENERAL ANTHONY CARRELLI, Adjutant General, In his Individual and Official
Capacity; PENNSYLVANIA CIVIL SERVICE COMMISSION; CHAIRMAN BRYAN
R. LENTZ, In his Individual and Official Capacity; COMMISSIONER ODELFA
SMITH PRESTON, In her Individual and Official Capacity; COMMISSIONER
GREGORY M. LANE, In his Individual and Official Capacity; UNKNOWN BOARD
MEMBERS Pennsylvania Department of Labor and Industry, Unemployment
Compensation Board of Review, (UCBR); KATHY M. MANDERINO, Secretary, in her
Individual and Official Capacity; LINDA A KERNS, Committee Member, In her
Individual and Official Capacity; SHERRI LUCHS, Committee Member, in her
Individual and Official Capacity; PENNSYLVANIA BUREAU OF PROFESSIONAL
AND OCCUPATIONAL AFFAIRS, (BPOA); PENNSYLVANIA DEPARTMENT OF
HEARING EXAMINERS; CHRISTOPHER K. MCNALLY, Hearing Examiner, In his
individual and official capacity
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1:17-cv-00148)
District Judge:  Honorable Susan Paradise Baxter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 13, 2025

OPINION[*]
_____

PER CURIAM

Nancy E. Lewen, proceeding pro se, appeals from orders granting a motion to dismiss in part and granting a motion for summary judgment in an action raising wrongful termination and related claims. For the following reasons, we will affirm the District Court's judgment.

I.

Lewen worked as a licensed practical nurse at the Pennsylvania Sailors' and Soldiers' Home ("PSSH"), which operates under the Pennsylvania Department of Military and Veterans Affairs ("DMVA"). While employed at PSSH, Lewen sent messages via Facebook to a coworker, Barry Blasic, which, in addition to describing mundane details of her life and job, expressed her romantic interest in him. Lewen also submitted to a nurse supervisor, Raymond Hamm, a "Witness Statement," accusing him of harassment. And on several occasions, Lewen made statements suggesting that her workplace grievances might lead to violence at PSSH. She also filed whistleblower complaints with the Pennsylvania Department of Health and the Pennsylvania Attorney General. The Department of Health complaint, which Lewen submitted anonymously,

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

pertained to alleged staffing deficiencies at PSSH. The complaint that Lewen submitted to the Attorney General concerned a failure by PSSH employees to report an incident involving resident-on-resident sexual abuse.

In March 2016, following an administrative investigation and a pre-disciplinary conference, PSSH Commandant Barbara Raymond notified Lewen by letter that she was terminated. The letter cited Lewen's "intimidating, threatening and inappropriate conduct and behavior towards [her] coworkers and [her] chain of command," which had "created an intimidating and hostile work environment." Dkt. No. 115-5 at 5. The letter also stated that Lewen had "failed to provide an acceptable explanation" for her actions during the pre-disciplinary conference and had "sent correspondence to [her] chain of command indicating 'bloodshed I fear may happen one day at PSSH.'" Id. Lewen appealed to the State Civil Service Commission ("SCSC") and applied for unemployment compensation. Both efforts were unsuccessful.

In 2017, Lewen filed a complaint in the United States District Court for the Western District of Pennsylvania, raising claims related to her termination. She named as defendants the PSSH, the DMVA, Commandant Raymond, and several state agencies, officials, and employees. The defendants filed a motion to dismiss, which the District Court granted in part based on, inter alia, various forms of immunity.[1] But the District Court declined to dismiss Lewen's First Amendment retaliation claim against Commandant Raymond. In response to that claim, Commandant Raymond filed a motion

---

[1] Lewen filed a motion for reconsideration, which the District Court denied.

for summary judgment. The District Court granted that motion, holding that Lewen's speech was not protected because it did not implicate matters of public concern, that there was no causal link between her speech and the allegedly retaliatory action, and that Commandant Raymond had an adequate justification for firing Lewen.[2] Lewen appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise plenary review over the order granting the motion to dismiss for failure to state a claim and the motion for summary judgment. See Black v. Montgomery County, 835 F.3d 358, 364 (3d Cir. 2016); Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006).

## III.

We begin with the order granting in part the defendants' motion to dismiss. As noted above, the District Court concluded that Lewen's claims against a majority of the defendants were barred by immunity. The Government argues that Lewen has forfeited

---

[2] The District Court also ruled on Lewen's "motions in limine," allowing her to supplement the record with certain evidentiary items, but denying her demand that the defendants be directed to produce videos and images associated with Facebook messages, as well as her request that witness testimony from her civil service and unemployment compensation hearing be excluded.

any challenge to that determination by failing to raise the issue in her opening brief.  We agree.  In general, litigants forfeit claims that they fail to develop in an opening brief.  See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).  Although Lewen's opening brief indicates that she is appealing from the order granting the defendants' motion to dismiss, she fails to raise any challenge to the District Court's immunity analysis.

We may reach forfeited issues, however, when there are "truly exceptional circumstances."  Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017) (internal quotations omitted); see also Falcone v. Dickstein, 92 F.4th 193, 210 (3d Cir. 2024).  Exceptional circumstances are "very limited" but "have been recognized when the public interest requires that the issue[s] be heard or when a manifest injustice would result from the failure to consider the new issue[s]."  Barna, 877 F.3d at 147 (internal quotations omitted) (alterations in original).  In her reply brief, Lewen emphasizes her pro se status and notes that her opening brief "asked this Court to review the entire record and grant any and all relief that is just and proper in the opinion of this Court."  Appellant's Reply Br., 9-10.  These circumstances, however, are not extraordinary.[3]  See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se litigants "must abide by the same rules that apply to all other litigants"); see also Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018) ("[A] passing

---

[3] Even if we reached the merits of the decision to grant the defendants' motion to dismiss, we would affirm because, for the reasons provided by the District Court, immunity bars a majority of Lewen's claims.

reference to an issue will not suffice to bring that issue before this court." (citation to quoted case omitted)).

## IV.

Next we turn to the entry of summary judgment in favor of Commandant Raymond on the First Amendment retaliation claim, which Lewen does challenge in her opening brief.[4] "To establish a First Amendment retaliation claim, a public employee must show that (1) [her] speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 986 (3d Cir. 2014). With respect to the first element, the employee must speak as a citizen (and not as an employee), "the speech must involve a matter of public concern," and "the government must lack an 'adequate justification' for treating the employee differently than the general public based on its needs as an employer under the" balancing test adopted in Pickering v. Board of Education, 391 U.S. 563 (1968).[5] Dougherty, 772 F.3d at 987 (quoting Gorum v. Sessoms, 561 F.3d 179, 185 (3d Cir. 2009)).

_____

[4] We note, however, that Lewen's opening brief does not challenge the District Court's rulings on her motions in limine. See Wettach, 811 F.3d at 115.

[5] That test requires courts to "'balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Dougherty, 772 F.3d at 991 (quoting Pickering, 391 U.S. at 568).

6

"Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." Miller v. Clinton County, 544 F.3d 542, 548 (3d Cir. 2008); see also De Ritis v. McGarrigle, 861 F.3d 444, 455 (3d Cir. 2017) ("We determine the public or nonpublic nature of an employee's speech by reference to the speech's 'content, form, and context,' . . . which encompasses 'the employee's motivation as well as whether it is important to our system of self-government that the expression take place.'" (citations omitted)). On the other hand, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest . . . are matters more immediately concerned with the self-interest of the speaker as employee." Palardy v. Twp. of Millburn, 906 F.3d 76, 83 (3d Cir. 2018) (citation omitted). Thus, "speech that relates solely to mundane employment grievances does not implicate a matter of public concern." Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 467 (3d Cir. 2015).

A.

We conclude that the undisputed evidence establishes that no matters of public concern were implicated in Lewen's Facebook messages to Blasic, in her "Witness Statement" to Hamm, or in her references to workplace violence. Although some of those statements criticized workplace practices at PSSH, the content, form, and context of those statements make clear that Lewen was merely expressing personal grievances or matters of personal interest. De Ritis, 861 F.3d at 455 ("[I]f a discrete unit of speech addresses only the employee's own problems, and even if those problems 'brush . . .

7

against a matter of public concern' by virtue of that employee's public employment, then that speech is merely a 'personal grievance.'" (quoting Miller, 544 F.3d at 551) (ellipsis in original)).

For instance, Lewen's private Facebook messages to Blasic concerned routine details of her life and complaints about work, as well as what the District Court aptly described as "romantic overtures, sexual innuendos, [and] comments about his family or the like."[6] Dkt. No. 152 at 24; see Adams v. County of Sacramento, 116 F.4th 1004, 1014 (9th Cir. 2024) (explaining that private text messages directed to only two recipients were not on a matter of public concern). The "Witness Statement" that Lewen submitted to Hamm centered on her contention that his "behavior did in fact escalate to the point of verbal bullying" when he admonished her for failing to comply with a rule regarding medication administration. Dkt. No. 115-5 at 9. There is no indication that the "Witness Statement," which Lewen herself conceded that she wrote as a "joke," was intended to communicate a "matter of political, social, or other concern to the community" or was "a subject of legitimate news interest." Lane v. Franks, 573 U.S. 228, 241 (2014) (citation omitted). Similarly, Lewen's statements about violence at PSSH were made in the context of her own workplace grievances.[7] Sanguigni v. Pittsburgh Bd. of Pub. Ed., 968

_____

[6] We need not describe in detail the contents of these messages, which are set forth in the District Court's opinion. It suffices to say that they were numerous, explicit at times, and not welcomed by Blasic.

[7] In a Facebook message to Blasic, Lewen stated, "[a]t one time I actually had a diagnosis of PTSD from being married to a bully a few decades ago. So I mentioned to [Hamm] last night that my brain sort of shut down the other morning. I told him that I don't plan

8

F.2d 393, 399 (3d Cir. 1992) (stating that "speech related solely to mundane employment grievances" is not a matter of public concern); see also Gaj v. U.S. Postal Serv., 800 F.2d 64, 67 (3d Cir. 1986) (holding that speech was not protected where plaintiff was "merely expressing himself as an employee dissatisfied with his own conditions of employment"). In sum, Lewen's First Amendment claim fails in part because the content of the statements described above was not of public concern.[8]  See Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 91 (2d Cir. 2020) (stating that plaintiff's "First Amendment claim fails because his complaints were not on matters of public concern").

B.

To the extent that Lewen's First Amendment claim was premised on her whistleblower complaints, which the District Court assumed constituted a form of protected speech, we conclude that the undisputed evidence fails to demonstrate a causal link between her conduct and her termination.  See Thomas v. Independence Twp., 463

---

to file a workplace violence complaint, but next time he just stands there with no balls and watches a bully scream at a person with PTSD, that person may go out to their vehicle and return with a gun and shoot him as well as her. . . . He admitted that he was glad I . . . didn't go get a weapon from my car and shoot the place up or something." Dkt. No. 115-3 at 51.  Several months later, Lewen told the Director of Nursing that a supervisor had yelled at her and that, although she forgave that supervisor, "supervisors would need to be careful because anyone else could go to their vehicle and return with a gun and shoot them."  Dkt. No. 115-2 at 68.  Finally, as noted in her termination letter, Lewen referred during the pre-disciplinary conference proceedings to "bloodshed" that she feared may occur "one day" at PSSH.  Dkt. No. 115-1 at 73.

[8] In light of this conclusion, we need not address the District Court's alternative determination that, under the Pickering balancing test, "PSSH's interests as a public employer significantly outweigh any interest that Lewen (or the public) may have had in the aforementioned speech."  Dkt. No. 152 at 33.

9

F.3d 285, 296 (3d Cir. 2006) (stating that to establish a First Amendment retaliation claim, a plaintiff must show, inter alia, a causal link between the constitutionally protected conduct and the retaliatory action). Indeed, there is no evidence indicating that Commandant Raymond or anyone at PSSH was aware, at the time of Lewen's termination, that Lewen had filed those complaints. The Department of Health whistleblower complaint was submitted anonymously. And although Lewen signed the whistleblower complaint that she submitted to the Attorney General, she expressly requested that her identity not be disclosed to PSSH or to the subjects of the complaint. Nevertheless, Lewen speculated that Commandant Raymond learned that she was the source of the whistleblower complaints because Lewen mentioned them in the Facebook messages that Blasic provided to PSSH in connection with its investigation. The record, however, belies Lewen's belief.

In particular, Blasic denied that he reported to anyone at PSSH that Lewen had made whistleblower complaints. That contention is supported by a March 2, 2016 email from a PSSH Human Resources Analyst to Commandant Raymond, stating that Blasic had provided Facebook messages "from the last ten days or so." Dkt. No. 115-7 at 30. None of the messages during that period referenced Lewen's Department of Health or Attorney General whistleblower complaints. Moreover, Blasic did not mention Lewen's whistleblower complaint in his statement to PSSH investigators. Furthermore, at the Civil Service Commission hearing, Lewen acknowledged that the record did not contain a complete account of the Facebook messages. In addition, Hamm, the PSSH Director of

10

Nursing, and a DMVA labor relations analyst who was involved in the decision to terminate Lewen all denied that anyone had told them of Lewen's whistleblower complaints. For her part, Commandant Raymond testified that she learned that Lewen filed the whistleblower complaints only after Lewen had been terminated.[9]

This evidence, viewed in the light most favorable to Lewen, fails to demonstrate that there is a genuine issue of material fact on the issue whether her whistleblower complaints were a "substantial or motivating factor" in the decision to terminate her. Doughtery, 772 F.3d at 986; see Kaucher, 455 F.3d at 423. Accordingly, the District Court properly concluded that Commandant Raymond was entitled to judgment as a matter of law.

V.

For the foregoing reasons, we will affirm the judgment of the District Court.[10]

---

[9] That testimony aligns with an email sent by Commandant Raymond after Lewen had been terminated, indicating that she had just learned that Lewen was the source of the complaint sent to the Attorney General. Prior to that point, Commandant Raymond believed that the complaint had been brought by the daughter of a patient.

[10] Lewen's "Motion for Miscellaneous Relief" and her "Motion to Sanction Appellee[s'] Counsel" are denied.

11