**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4333
_____

MIRIAM HANZER,
                              Appellant

v.

MENTOR NETWORK

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-12-cv-00363)
District Judge:  Honorable Leonard P. Stark

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2015

Before:  FISHER, KRAUSE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: May 4, 2015)
_____

OPINION[*]
_____

PER CURIAM

     Miriam Hanzer, proceeding pro se, appeals from an order of the United States

District Court for the District of Delaware granting summary judgment in favor of the

defendant.  We will affirm.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

In June 2006, Hanzer was hired by National Mentor Healthcare, LLC d/b/a Delaware Mentor ("DE Mentor") as a direct care professional. DE Mentor provides residential and day services to adults with developmental disabilities. In September 2006, Hanzer was promoted to House Manager of the Millsboro House, one of DE Mentor's seven residential care facilities. In November 2007, Hanzer was promoted to Case Manager and reported directly to Karen McGee ("McGee"), the Program Director for DE Mentor. In her position as Case Manager, Hanzer was responsible for creating and maintaining the Essential Lifestyle Plans ("ELPs") for all seven DE Mentor residential facilities.[1] She was also responsible for reviewing Personal Spending Records ("PSRs") which accounted for spending from client accounts.

Hanzer alleged that in 2009 she noticed discrepancies in three PSRs at the Falcon Crest House facility and alerted McGee. Following an investigation into the matter, the PSRs were properly adjusted and the employee at the Falcon Crest House who was responsible for the discrepancies was terminated. However, Hanzer alleged that McGee asked her to replenish the missing client funds with her personal money, which she refused to do.

In December 2009, DE Mentor was placed on probation by the State of Delaware due to systemic issues, including problems with ELPs and medical administration. As a result of the probation, DE Mentor sought to build a stronger infrastructure by adding additional personnel, including Elizabeth Donaway ("Donaway") in the Quality

---

[1] ELPs are written plans that detail care requirements for clients.

2

Assurance Department. Thereafter, Donaway determined that certain ELPs that had been prepared by Hanzer were non-compliant and needed to be redrafted. Donaway met with Hanzer on several occasions to discuss the deficiencies in the ELPs and the ways in which she could improve their content.

Hanzer alleged that McGee and Nancy Biel, the Assistant Program Manager, began to mock her accent around that time. She also claimed that McGee asked her to complete tasks that she did not believe were part of her job.

In January 2010, Hanzer attended a meeting with McGee and Biel to discuss a complaint about Hanzer that they had received from Michelle Davis ("Davis"), one of the House Managers. Davis had alleged that Hanzer had been "overstepping her boundaries" at the facility Davis oversaw. During that meeting, McGee reminded Hanzer that House Managers did not report to her, and she encouraged Hanzer to focus on her own responsibilities. After that meeting, Hanzer sent McGee a letter dated January 21, 2010, in which she further complained about Davis and explained her reasons for interfering.

Later that month, Hanzer contacted the Executive Director at DE Mentor to complain that she was being treated unfairly by McGee. Although Hanzer recounted several work issues that she was having with McGee, she did not indicate that she believed her race, ethnicity, or skin color was a factor in the mistreatment. In response to Hanzer's complaints, the Executive Director told Hanzer that some of the changes of which she complained were the result of DE Mentor's probationary status.

In March 2010, after Hanzer had an outburst in front of clients and staff at one of DE Mentor's facilities, the Executive Director terminated Hanzer's employment. The Executive Director also informed Hanzer that the Case Manager position was being eliminated and that it would be replaced by a higher level position, Program Support Coordinator. The Program Support Coordinator position would require a bachelor's degree, which Hanzer did not have.

Hanzer filed a complaint in the District Court, alleging that DE Mentor subjected her to a hostile work environment and discriminated against her because of her race (Hispanic), national origin (Panamanian), and color (Mestizo). She also alleged that DE Mentor terminated her employment in retaliation for having complained about such discrimination. Hanzer brought her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Delaware Whistleblowers' Protection Act, 19 Del. C. § 1701, et seq. Following discovery, the DE Mentor filed a motion for summary judgment, which the District Court granted. Hanzer appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo, and view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013). Summary judgment is proper only if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4

The District Court properly analyzed Hanzer's discrimination and retaliation claims according to the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Under the McDonnell Douglas framework, Hanzer bore the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas Corp., 411 U.S. at 802. If she succeeded, the burden would shift to DE Mentor to "articulate some legitimate, nondiscriminatory reason" for her termination. See id. Hanzer would then have an opportunity to show that the legitimate reason offered by DE Mentor was pretextual. See Jones, 198 F.3d at 410.

Here, even if Hanzer established a prima facie case of discrimination, we agree with the District Court that DE Mentor articulated legitimate, nondiscriminatory reasons for her termination. DE Mentor provided evidence indicating that Hanzer was terminated, in part, because of job performance issues.[2] See Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014) (recognizing that "demonstrably poor job performance" qualifies as a legitimate, nondiscriminatory reason for termination). DE Mentor also provided evidence indicating that Hanzer was also terminated because her position was being eliminated and upgraded in an effort to remove DE Mentor from state probation.

---

[2] For example, the Quality Assurance Department determined that the ELPs Hanzer had prepared were deficient. And, although she met with Donaway to discuss the ways in which she could improve them, Donaway determined that Hanzer's work showed little improvement. In addition, Hanzer had an outburst in front of both clients and staff at one of DE Mentor's facilities and improperly interfered with the duties of a House Manager at another.

Hanzer has not produced a material issue of fact demonstrating that DE Mentor's proffered reasons for firing her were a pretext for discrimination. To establish pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication," or (2) present evidence sufficient to support an inference that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). To meet that burden, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken." Id. at 765.

Hanzer argues that DE Mentor's decision to require a bachelor's degree for the Program Support Coordinator position was mere pretext for discrimination against her because a similarly situated employee (who was white) was promoted to the Program Manager position without having a college degree. However, as DE Mentor correctly notes, the Program Manager position is an entirely different position than the Program Support Coordinator position. Thus, they were not similarly situated employees. See Jones, 198 F.3d at 413 (holding that a plaintiff may support an assertion that an invidious discriminatory reason was more likely than not a determinative cause by showing that "the employer has treated more favorably similarly situated persons not within the protected class") (citation and quotation marks omitted). Moreover, Hanzer has not set forth any reasons why the qualifications for the Program Manager position and the

6

Program Support Coordinator position should have been the same.[3] Accordingly, we agree with the District Court that Hanzer did not offer any evidence showing weakness or implausibility in DE Mentor's proffered reasons for terminating her employment such that a reasonable jury could find in her favor.

The District Court also properly rejected Hanzer's retaliation claim. To establish a prima facie claim of unlawful retaliation, Hanzer was required to show that: (1) she engaged in a protected activity; (2) the defendant took an adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action taken. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). Title VII defines a protected activity as, inter alia, an instance where an employee has opposed a discriminatory employment practice based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2(a)(1); 2000e-3(a).

In its motion for summary judgment, DE Mentor argued that Hanzer failed to establish a prima facie case of retaliation because she had not demonstrated that she was terminated as a result of a protected activity. In response, Hanzer maintained that the January 21, 2010 letter she sent to McGee (in which she described her interactions with Davis) was protected activity. We agree with the District Court that Hanzer's letter does

---

[3]Hanzer also attempts to establish pretext by arguing that one of the five people who has held the Program Support Coordinator Position (following her termination) did not have a bachelor's degree. DE Mentor admitted that it made an exception in one instance (the second hire) because that individual possessed a significant amount of relevant work experience that was commensurate with a bachelor's degree. We agree with the District Court that Hanzer failed to set forth evidence from which a reasonable jury could conclude that she possessed a similar level of relevant experience.

not constitute protected activity under Title VII. Although the letter raised general concerns about Davis' job performance, it did not allege any type of discrimination recognized by Title VII. Therefore, the District Court correctly concluded that Hanzer failed to establish the first prong of her prima facie retaliation claim.[4]  Cf. Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (explaining that letter to HR complaining that position was given to less qualified candidate was not protected activity under the Age Discrimination in Employment Act because it did not explicitly or implicitly allege that age was the basis for the adverse employment action).

Summary judgment was also appropriate on Hanzer's hostile work environment claim under Title VII. To establish a prima facie case of a hostile work environment, Hanzer was required to show that: (1) she suffered intentional discrimination because of her race, national origin, or color; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same race in her position; and (5) there is a basis for employer liability. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074,

---

[4] To the extent that Hanzer argues that summary judgment was inappropriate because there was a genuine issue of fact as to whether her January 21, 2010 letter alleged discrimination, we disagree. We have reviewed the letter and conclude that no reasonable juror could have found that the letter alleged discrimination on the basis of race, color, or national origin. And, although Hanzer suggested that she told the Executive Director that she was being discriminated during a January 2010 telephone conversation, at Hanzer's deposition she admitted that, during the call, she did not allege mistreatment because of her race, ethnicity, or skin color. Rather, she stated that she believed she was being mistreated because she refused to sign certain PSRs.

8

1082 (3d Cir. 1996). Analysis of hostile work environment claims requires an assessment of the totality of the circumstances. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "conduct must be extreme to amount to a change in the terms and conditions of employment").

Hanzer alleged she was mocked because of her accent but could only pinpoint one occasion where such mocking occurred. She also claimed that McGee often changed her responsibilities, which left her feeling harassed. Even assuming that Hanzer's allegations are true, we agree with the District Court that one derogatory comment, along with changes in Hanzer's work responsibilities, is insufficient to constitute the pervasive behavior required to sustain a hostile work environment claim. See Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (stating that "offhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim.") (citation and internal quotation marks omitted). Moreover, as the District Court noted, there was significant information in the record from which to conclude that any changes made to Hanzer's work were the result of DE Mentor's probationary status.[5]

We have considered Hanzer's remaining arguments on appeal and conclude that they are without merit. Accordingly, we will affirm the District Court's judgment.

---

[5] We also agree, for the reasons carefully outlined by the District Court, with the rejection of Hanzer's claim under the Delaware Whistleblowers' Protection Act.